#### CHEVES *ET AL.* v. CITY COUNCIL OF CHARLESTON

##### (138 S. E., 867)

1. Constitutional Law—Municipal Corporation's Contract With Property Owners Relative to Cost of Improving Streets May Not be Impaired by Statute or Ordinance.—A municipal corporation is bound by contracts entered into with property owners for apportioning cost of paving or improvement of certain streets, and subsequent Acts of Legislature or ordinances of the City Council cannot operate to permit it to impair obligation of such pre-existing contracts regularly made and authorized.

2. Municipal Corporations—Municipal Corporation's Contract With Property Owners for Paving Within Specified Time Will be Enforced After Such Time.—Where contract of municipal corporation with property owner for apportioning cost of paving and improving street within four years was not completed due to the fact that street was not considered adaptable to hard-surface paving until after expiration of such four years, contract on paving thereafter would be enforced as originally written on theory that operation thereof was extended.

3. Municipal Corporations—Municipal Corporation's Contract With Property Owner to Pave Boulevard Constituted. Agreement to Pay Therefor.—Municipal corporation's contract with property owner to pave boulevard in consideration of valuable property rights *held* to constitute agreement by city, not only to pave, but also the obligation to pay for such paving.

4. Municipal Corporations—Property Owner by Permitting City to Lay Shell on Boulevard Did Not Waive Right to Have Boulevard Paved in Accordance With Contract.—Property owner permitting city to lay shell and other similar substances and material on boulevard after contracting with city to pave it, in return for certain valuable property rights, did not waive right to require boulevard to be paved in accordance with contract.

5. Municipal Corporations—Property Owners Failing to Require City to Pave Streets in Accordance With Contract When Im-

PRACTICABLE DID NOT BAR THEM FROM ASSERTING RIGHT.—Where it was impracticable or inadvisable to pave streets at time of property owners' contracting with city to do such paving in return for valuable property rights, failure of property owners to assert their rights until after lapse of considerable time did not bar them from asserting right to require city to pay for such paving at time it was practical to install it.

6. EQUITY—LACHES CONNOTES NOT ONLY LAPSE OF TIME, BUT ALSO NEGLIGENCE.—Laches connotes, not only lapse of time, but also negligence and opportunity to have acted sooner.

7. COVENANTS—COVENANTS ARE TO BE CONSTRUED TO EFFECT INTENTION OF PARTIES FROM INSTRUMENTS AND CIRCUMSTANCES SURROUNDING THEIR EXECUTION.—Covenants are to be construed so as to carry into effect intention of parties, which is to be collected from the whole instruments and circumstances surrounding its execution.

8. MUNICIPAL CORPORATIONS—CITY'S AGREEMENT TO PAVE STREETS IN CONSIDERATION FOR PROPERTY RIGHTS CONSTITUTED "COVENANT RUNNING WITH LAND."—Agreement by city to pave streets in consideration for certain valuable property rights *held* to constitute a "covenant running with the land," and inuring to benefit of parties subsequently acquiring interest in any of property affected.

9. COVENANTS—ASSIGNEE MAY SUE ON COVENANT BROKEN PRIOR TO CONVEYANCE.—Assignee has right to sue on a covenant broken prior to conveyance to him.

10. MUNICIPAL CORPORATIONS—CITY'S AGREEMENT WITH PROPERTY OWNER RELATIVE TO COST OF PAVEMENT IN RETURN FOR PROPERTY RIGHTS INCLUDED COST OF DRAINS.—Contract by city with property owner relative to paving streets in consideration for certain valuable property rights transferred to city *held* to cover drains necessary and incident to pavement, though items comprising cost thereof were segregated.

Before BONHAM, J., Charleston, April, 1926.    Affirmed.

Several actions, by Henry C. Cheves and another, by St. J. Alison Lawton, by Virginia Hays Osburn, by Henry C. Cheves and another, individually, and Augustine T. Smythe, as substituted trustee under the will of Alice Middleton, by Henry M. Hunter, by Louise G. Logan, and by Langdon Cheves, against the City Council of Charleston, which cases were consolidated for trial.    Judgments for plaintiffs, and defendant appeals.

The judgment of the Circuit Court, affirmed on appeal, is as follows:

"The plaintiffs in these cases contend that under certain contracts, or, more properly, deeds, entered into with the City Council of Charleston, there is no obligation on their part to pay, except as previously agreed upon, any proportion of the cost of paving or improving Murray Boulevard.

"All of the cases were brought for the purpose of restraining and enjoining the City Council of Charleston from claiming any liens against the property of the plaintiffs, or attempting to collect the assessments already levied, or attempted to be levied, for improvements made, or to be made, on Murray Boulevard, and also to restrain and enjoin the issuance of bonds representing the amount claimed to be due to the City Council of Charleston under the said assessments. Pursuant to the provisions of an Act passed by the General Assembly of South Carolina, on the 10th of March, 1922 (32 St. at Large, p. 1346), the City Council of Charleston was authorized and empowered to levy assessments upon abutting property for the purpose of paying for permanent improvements to streets and sidewalks. Under the provisions of this Act, the City Council of Charleston passed an ordinance on the 18th day of April, 1922, providing for the levy of such assessments, and it is under this ordinance that the assessments in these cases have been attempted to be levied. By agreement of counsel, and with the consent of the Court, all of the above cases were consolidated.

"Since hearing the testimony taken before me, I have given very careful thought to this matter and have listened attentively to the arguments of counsel made before me to-day. The case is one of public interest and, in my opinion, should be promptly decided. I therefore conclude that the City Council of Charleston is bound by the contracts in these cases and that subsequent Acts of the Legislature, or ordinances of the City Council of

Charleston, cannot operate to permit the defendant to impair the obligation of its pre-existing contracts, regularly made and authorized.   The fact that certain of the plaintiffs may not have protested at the various times required under the ordinance referred to, cannot now deprive these parties, of their rights, particularly in view of the fact that it appears that all of the suits were very promptly instituted, after notice of the attempted assessments.   Those who brought their suits after the ten days stipulated in the ordinance were within a very few days of that time, and the other suits had already been brought, so that the city had full knowledge that the question would be raised and was in no way prejudiced by the lapse of a few days.   Those who served the injunction proceedings upon the City Council of Charleston within the period of ten days were clearly within the reason of its terms, even though they made no further protest—the injunction suit being protest enough. Aside from all this, however, as I have said, the Legislature and City Council could not put a time limit on plaintiffs' rights to enforce their pre-existing contractual rights.

"In the cases of Cheves, Hunter, Lawton, and Osburn, the city agreed to fill in the low land and to pave the boulevard, both sidewalks and driveway, and it is apparent, under the testimony, that these parties, or their predecessors in title, parted with valuable property rights, in consideration of the covenants and agreements on the part of the City Council of Charleston to be performed. The same reasoning applies to the contract entered into with the distributees of the estate of Henry A. Middleton, under which certain parties in these proceedings claim.   In this last agreement, the City Council of Charleston covenanted and agreed to pave the boulevard in front of its own land and of the lands of the estate, within four years from the date of the contract, and the other parties agreed to pay one-third of the cost of the paving, not, however, exceeding $3,000, provided the boulevard be paved within four years

from the date of the contract.    Counsel for the parties claiming under this contract stated that it was not their contention    that because the paving was not, in fact, done within four years that these parties are therefore relieved from paying their proportion of the cost originally agreed upon, but only that, the operation of the contract having been extended, due to the fact that Murray Boulevard has only recently been considered adaptable to a hard-surface paving, the contract should now be enforced as originally written.    Such a construction of this contract would be equitable.

"The testimony adduced by the plaintiffs was conclusive on the point that the paving originally contemplated, at the time of the execution of the contracts in question, was asphalt, or some other suitable hard-surface, and counsel for the defendant conceded on the argument that this was the case, stating, however, that at the time the answers of the City Council were prepared, counsel did not have all of the information which he later acquired.    The defense of the Statute of Limitation interposed in the various answers was also withdrawn.    Therefore the position of the City Council is that, although it agreed to pave the boulevard with asphalt, or some other suitable hard-surface paving, yet, by reason of the various technical defenses interposed, it should be relieved from its obligation under the contracts and should not now be required to perform its obligation in the matter, which, as has been shown, was incurred in return for valuable property rights relinquished by the parties claiming under the contracts, or their predecessors in title.

"The agreement of the City Council being to pave the boulevard, it would be an utterly futile thing to say that this provision meant anything but that the city was to *pay* for the paving.    Counsel for the defendant suggests that this provision referred only to the time in which the paving was to be done and that the agreement of the city to pave did not also carry with it the obligation to

pay for the paving. Under the uncontradicted testimony in the cases, there is only one possible inference and conclusion, and that being that such a contention is untenable.

"The answers of the City Council of Charleston allege that it laid certain shell and other similar substance and material on the boulevard; that this work was done with the knowledge and consent of the plaintiffs, who it is alleged acquiesced in this action on the part of the defendant, it being contended that the plaintiffs thereby waived any rights which they may have had to require the boulevard to be paved with the material which the defendant had agreed to supply. Under the uncontradicted testimony, I find present none of the essentials necessary to constitute a waiver and estoppel on the part of the plaintiffs. The City Council of Charleston was not misled in taking such action, nor has it been shown that the defendant acted to its detriment and changed its position. The testimony was that the estate of Middleton had paid all of the amounts required of it for the entire reclamation project and that it had complied in all respects with the contract entered into with the City Council of Charleston. The defense of waiver and estoppel cannot, therefore, be maintained.

"The defendant also defends on the ground that the plaintiffs have unreasonably and inexcusably delayed in asserting their rights and that they are now consequently barred by laches from asserting at this time their rights under the contracts. Under the testimony, it appears that it has been impracticable or inadvisable to perform the contemplated paving until quite recently, and it further appears that these proceedings were brought almost immediately after notice that the assessments would be levied. Laches connotes not only lapse of time, but also negligence and opportunity to have acted sooner and it is difficult to apprehend in what manner the plaintiffs can be said to have been negligent, nor in what manner they could have acted

more promptly.    This defense cannot, therefore, be maintained.

"The defense is also interposed that certain of the 7, 8 plaintiffs in these proceedings were not parties to the contracts, under which they now claim, and that the covenants and agreements on the part of the defendant were not covenants running with the land and did not inure to the benefit of these parties.    Covenants are to be construed so as to carry into effect the intention of the parties, which is to be collected from the whole instrument and from the circumstances surrounding its execution.    The words used in the deeds expressly created a covenant and the form of the deeds indicate further that not only was the agreement on the part of the city a covenant, but also that it was intended that these covenants should run with the land and inure to the benefit of parties subsequently acquiring an interest in any of the property affected.    Other covenants in certain of the deeds provided that the parties, their heirs and assigns, who may be the owners of any of the property, shall have the right to reserve landings and to build steps along the front of the sea wall.    While the form of the deed is in some instances an indenture and in others a deed-poll, the substance of the deeds is in all cases practically the same on these points and it is too clear for argument, taking the deed in conjunction with the testimony, that it was the intention of the parties to create the covenant which would run with the land.

"It is further alleged as a defense that, the covenants 9 on the part of the City Council of Charleston having been breached, prior to the conveyance or devise, as the case may be, of portions of the property, to certain of the plaintiffs, that these plaintiffs have therefore no right of action.    This defense is predicated on the theory that the breach of a covenant is a chose in action, which does not pass with the land and is not assignable.    Due to the fact that the operation of the contracts had been extended it

would be a difficult matter to decide, with any degree of certainty, when the branch of covenant, if any, actually occurred. In view of the decisions in our State, it is not, however, necessary to determine the question as to when the covenants were actually broken; for under our decisions, the right of an assignee to sue on a covenant broken, prior to the conveyance, has been sustained. This defense cannot, therefore, be sustained.

"Counsel for the defendant also suggests that even though the plaintiffs be not liable for the paving, still they should be held liable for the cost of the drains. Only one assessment was made, this comprising both the cost of the paving and of the drains, although the items are segregated. It is clear that the agreement between the various parties and the City Council of Charleston was that, in return for the valuable property rights deeded to the city, the defendant would pay the entire costs of the paving in front of the Cheves, Hunter, Lawton and Osburn properties, and, as stated, the owners claiming under the Middleton contract were to pay one-third of the cost of the paving, not, however, exceeding $3,000, and the whole amount to be paid by them in any event, in addition to this item of $3,000, was expressly provided in the contract not to exceed $34,950. The evidence clearly shows that this last named amount has been paid in full, and therefore the City Council cannot now make a call for anything further, with the exception of the item of $3,000. While the item of drains is not specifically mentioned in the contract, it appears from the testimony that it was the intention of the parties that the plaintiffs should be held free from any expense incurred for street improvement, except as stated. It appears that the City Council of Charleston by a formal resolution, subsequently to the execution of the contract in question, and later confirmed by deed, agreed to save harmless the executors of the estate of Henry A. Middleton and the devisees thereof, their heirs and assigns,

from any further expenses than they had agreed to contribute for the work, and to preserve and maintain the sea wall and boulevard when 'erected, without any charge, cost or expense to them.   It is manifest, therefore, that it was the intention of the parties that the contracts should cover the drains, which were incident to the paving.

"It is therefore ordered, adjudged and decreed: That the defendant, the City Council of Charleston, its officers, attorneys, servants and agents, be perpetually enjoined and restrained from claiming any liens against the property of the plaintiffs by reason of the improvements now being made, or proposed to be made, to Murray Boulevard, or attempting to collect assessments therefor and from claiming any liens for any such improvements to the property of the plaintiffs.   That the defendant, the City Council of Charleston, its officers, attorneys, servants and agents be perpetually enjoined and restrained from issuing and selling bonds representing the amount claimed to be due to the City Council of Charleston on assessments levied, or to be levied, against the abutting property of the plaintiffs in these cases, for such improvements.   That the plaintiffs in these cases claiming under the contract entered into with the distributees of the estate of Henry A. Middleton do pay to the City Council of Charleston, in such manner as may be agreed upon, upon the completion of the paving and other improvements now being made, or proposed to be made to Murray Boulevard, their proportionate part, based on their respective foot frontages, with amount of one-third of the cost of the paving, not exceeding the sum of $3,000, originally agreed to be paid, provided that upon a failure to agree as to the time and manner of payment any party to these proceedings shall have leave to apply to the Court, at the foot of this decree, for a further order in this particular. That the City Council of Charleston, its officers, attorneys, servants and agents be perpetually enjoined and restrained from collecting, or attempting to collect from the plaintiffs,

save as to the proportion of $3,000, due by certain of the plaintiffs, as above set out, and part of the cost of the said improvements to Murray Boulevard, inclusive of the cost of drains."

*Mr. Lionel K. Legge,* for appellant, cites: *Contract exempting property from taxation must be clearly proved:* 181 U. S., 531; 45 L. Ed., 986. *Unless expressly authorized by its charter or by statute, a city may not by contract exempt property from liability for assessment:* 28 Cyc., 1133; 25 R. C. L., 128; 5 McQuillan, Munic. Corp., 4417; 50 S. C., 368; 54 S. C., 449; 68 S. C., 26; 126 Pac., 426; 41 L. R. A. (N. S.), 781; 64 S. W., 180; 47 N. E., 1029; 143 N. E., 181; 51 So., 802; 262 S. W., 628; 142 U. S., 79; 35 L. Ed., 943. *Covenants running with the land:* 4 Coke, 16; 7 R. C. L., 1100; 1 Nott & McC., 104; 9 Rich., 374; 1 Strob., 514; 15 C. J., 1253, 1258. *Failure of property owner to file objection to an assessment within time prescribed by law precludes him from thereafter contesting its validity:* 5 McQuillan, Munic. Corp., 4521; 25 R. C. L., 179; 28 Cyc., 1174; 235 Fed., 485; 9 A. L. R., 590; 139 Pac., 273; 9 A. L. R., 627; 80 Pac., 142; 68 N. E., 105; 90 Pac., 353; 142 Pac., 268; 154 Pac., 1029; 138 N. W., 967; 155 S. W., 350; 130 N. W., 870; 171 Pac., 2; 234 S. W., 629; 249 S. W., 590; 105 Pac., 107; 6 R. C. L., 309; 31 S. C., 1; 42 S. C., 88; 187 U. S., 437; 47 L. Ed., 249; 123 S. C., 91. *Cases distinguished:* 16 A. L. R., 493; 89 S. E., 764; 197 U. S., 544; 15 Wall., 320; 115 U. S., 672; 96 U. S., 440; 146 U. S., 266.

*Mr. Simeon Hyde, Jr.,* for respondents, Henry C. Cheves, Charlotte Cheves Hardison and Leonora F. Cheves, and *Mr. Nath. B. Barnwell,* for respondents, St. J. Alison Lawton and Virginia Hays Osburn, cite: *City of Charleston empowered to levy assessments:* Ar. 10, Sec. 14, Const. *Contract made by city to pave boulevard a valid and binding contract:* 16 A. L. R., 493; 89 S. E., 764. *Same, could*

*not be altered by subsequent legislative enactment:* Ar. 1, Sec. 10, Const., 197 U. S., 544; 15 Wall., 320; 115 U. S., 672; 96 U. S., 440; 146 U. S., 266. *Covenants running with the land:* 1 Nott & McC., 104; 9 Rich., 374; 27 S. C., 193; 40 S. C., 413; 10 S. C., 31; 1 McM., 462; 15 C. J., 1220, 1240; L. R. A., 1927-A, 121, 125; L. R. A., 1915-C 216; 7 A. L. R., 810; 38 A. L. R., 1151, 1158; 99 S. W., 34; 52 So., 562; 93 N. E., 516; 84 S. E., 846; 53 S. E., 707; 6 L. R. A. (N. S.), 436; 7 R. C. L., 1085. *Plaintiff's rights not waived:* 194 U. S., 553; 126 S. E., 523; 129 S. E., 82; 9 A. L. R., 636; 123 S. C., 91. *No error to admit incompetent testimony before Judge where there is no jury:* 133 S. C., 1. *Cases distinguished:* 115 S. C., 108; 181 U. S., 531; 68 S. C., 26.

*Messrs. Simeon Hyde, Jr.,* and *W. Turner Logan,* for other respondents.

*Mr. Augustine T. Smythe,* for respondents, *Langdon Cheves* and *Henry M. Hunter.*

July 20, 1927.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

For the reasons assigned by his Honor, Judge Bonham, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.

MR. JUSTICE CARTER did not participate.