14125

EPTING *ET AL.* v. LEXINGTON WATER POWER CO.

(181 S. E., 66)

*Mr. George Bell Timmerman,* for appellant,

*Messrs. Herbert & Dial* and *McKendree Barr,* for respondents,

August 12, 1935.

The opinion of the Court was delivered by ·MR. JUSTICE BAKER.

On February 12, 1903, D. L. Epting conveyed to L. I. Guion for the express consideration of $100.00, a tract of 1¼ acres of land in Lexington County whereon was situate at the time his mill and gin that were run by water power from the Saluda River on which the lot fronted. Immediately after the description the following was inserted:

"It is expressly stipulated and agreed that as soon as it becomes necessary to have my mill and gin houses now situated upon said premises removed therefrom, the said L. I. Guion, his heirs or assigns, shall pay me an additional sum

of one hundred and thirty dollars, and shall furnish me eighteen electrical horse power to operate said mill; and the said Guion or his assigns shall have the right and privileges of removing same mill and gin and re-erect the same on my premises in said county and put the same in as good condition as it is in before it is removed and shall furnish appliances and eighteen electrical horse power to me for the purpose of operating the same, but in case the said Guion or his assigns should prefer to have me remove and re-erect said mill and gin, then the said Guion or his assigns are to pay me an additional sum of six hundred and thirty dollars for re-erecting and removing said mill and gin upon my premises, and it is to furnish me with eighteen electrical horse power at the power house to operate said mill and gin.

"Provided that I am to have the use of the mill, gin and premises hereby conveyed, until the said Guion or his heirs or assigns require me to remove the same.

"Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging, or in anywise incident or appertaining."

The habendum is regular, the warranty general, and at the end of the deed, without witnesses or probate, appears: "I hereby accept the foregoing deed and the stipulations therein contained. L. I. Guion."

The operation of the entire plant was discontinued and the building removed by or before the year 1916, when the mill and dam went into disuse; and all that remained of the former mill was sold by the administrators of the estate of D. L. Epting shortly after his death in 1923. The Lexington Water Power Company purchased from Guion (Epting's grantee) about 1926, but made no use of the 1¼ acres so transferred until 1929 when this tract and thousands of other acres were overflowed to form Lake Murray, one of the largest water power developments for the generation of electric current in the world; the power house for such project being situate about 15 miles from the location of the mill and gin lot. No gin or mill has replaced the old

one. In the spring of the year 1933, this action was commenced by the plaintiffs, the only heirs-at-law of D. L. Epting, they having administered his estate, paid all his debts, and obtained their discharge on October 15, 1924.

The complaint alleged in substance the facts before narrated; that the plaintiffs are the owners of all rights and interests formerly of D. L. Epting; that the mill was moved by D. L. Epting or his heirs and no sum has been paid to either; and that they are entitled to (a) $630.00 for its removal, (b) the delivery of eighteen horse power and necessary appliances for its use, and (c) the value of eighteen horse power from the date of the electrical output at Saluda Dam to the present time; basing their claim on the allegation that the stipulations in the deed hereinbefore set out are covenants that are appurtenant to, and run with, the land conveyed.

The last is the gravemen of this action.

Upon the trial of the case, the facts having been proven as before set out, that all of the lands of D. L. Epting had been sold, the heirs purchasing, and that one such tract now owned by Mrs. J. N. Ham, a daughter of D. L. Epting, situate about 2 miles from the mill and gin site, was the place at which the plaintiffs demanded delivery of the eighteen horse power, the Circuit Judge directed a verdict for the plaintiffs as follows: "We find for the plaintiffs eighteen electrical horse power to be delivered to the plaintiffs on the premises of Mrs. J. N. Ham, in Lexington, within two miles of the original site, and $56.00 per year per horsepower on eighteen horsepower from 31st of December, 1929, to date of commencement of delivery."

Obviously, so much of the judgment as gives damages for non-delivery of the power before plaintiffs themselves had offered to connect with the power house, and before they could even use such power, is contrary to any possible construction of the contract.

"In the performance of covenants, it is a maxim, that he who prevents a thing from being done, shall not avail him-

self of the nonperformance; and where there are reciprocal duties to be performed by the parties he who alleges a breach ought to shew he was always ready and willing to perform what he was obliged to do; otherwise he shall not be permitted to come into court and take advantage of his own laches or neglect." Syllabus to *Fannen v. Beaufford et al.,* 1 Bay, 235 (1 S. C. Law, 235).

Nor can that portion of the verdict possibly stand where the defendant is required to deliver the current "on the premises of Mrs. Ham"; the stipulation in the deed being express that such delivery (if the provision thereabout is binding upon the assignee as a covenant running with the land) shall be "at the power house."

"That it was the duty of the Court to construe the written contract and to interpret and declare its meaning if the language used was susceptible of only one reasonable signification, there can be no question. That the agreement of the parties is to be ascertained from the plain language employed by them, and that such agreement is to be enforced, no matter what the intention may have been, is equally well settled. 6 R. C. L., 841, § 231. But that rule is not to be pushed to the length of requiring that by its operation 'the general intention of the parties, as evidenced by the contract itself, shall be frustrated or perverted either in whole or in part.' The terms "employed are servants, and not masters, of a perspicuous intent; they are to be interpreted so as to subserve, and not to subvert, such intent.' 6. R. C. L., 841, § 231; *Chism v. Schipper,* 51 N. J. Law, 1, 16-A, 316, 2 L. R. A., 544, 14 Am. St. Rep., 668." *Breedin v. Smith et al.,* 126 S. C., 346, 120 S. E., 64, 67.

While more cases are to be found in our Courts involving realty and the limitations of estates than, perhaps, on any other subject, there are very few on the question of covenants running with the land as presented by this appeal. In the case of *Hammond v. P. R. & A. R. Co.,* 15 S. C., 10, it is said, "Covenants running with the land are covenants

which bind the grantor. This is not a deed of indenture, but is a deed-poll, signed by the grantor alone, and how can the stipulations in this deed be made the covenants of the grantee? If Hammond had intended to rely for his protection upon a covenant by the grantee, would he not have taken a second instrument, properly prepared and executed?"

The deed under consideration in the *Hammond case* was construed by the Court, however, as one upon condition subsequent, so this quoted statement is *obiter* and not controlling, having evidently been made upon the authority of *Spencer's case,* 5 Coke, 16a, and if a written, formal acceptance were now necessary to bind the grantee, it could not here be charged because Guion's agreement was neither witnessed nor probated as required by law and could afford no notice. *Watts v. Whetstone, 79* S. C., 357, 60 S. E., 703.

In the case of *Dawson v. Western Maryland R. R. Co.,* 107 Md., 70, 68 A., 301, 303, 14 L. R. A. (N. S.), 809, 126 Am. St. Rep., 337, 339, 15 Ann. Cas., 678, the language used by the Court of last resort, relative to the effect of covenants arising out of a deed-poll, is as follows: "The acceptance of a deed poll cannot have the effect in this state of binding a grantee as a covenantor. It is said in 8 Am. and Eng. Ency. of Law, 65, in speaking of the exceptions made in New York and New Jersey to the general rule, that in order that a provision be binding as a covenant it must be under the seal of the party by whom it is to be performed, 'But this exception has been justly criticized as erroneous in principle, and will be found to be unsupported by the authority of any adjudged cases, except those rendered in the states above mentioned, which have adopted them. *It may safely be stated as the general rule that mutual covenants cannot arise out of a deed poll.'* " (Italics added.)

The case on the subject of covenants running with the land to which all others point is known as *Spencer's case,* 5 Coke, 16a, 15 E. R. C., 233, wherein Spencer demised a house and lot to S for years. "S covenanted for himself his

executors and administrators, that he, his executors, administrators, or assigns, would build a brick wall on part of the land demised, S assigned the term to J, and J to Clark. Spencer sued Clark for breach of the covenant to build the wall. The Court by the first resolve held that a covenant bound the assignee only when it was concerning a thing *in esse,* parcel of the demise, not when it related to a wall to be built. By the second resolve, they held that if the covenant had bound the 'assigns' by express words, it would have bound the assignee, although it was for a thing to be newly made, as it was to be upon the thing demised; but that if the covenant was for a thing to be done collateral to the land, and it did not touch or concern the thing demised, in any sort, as if it were to build a house upon other lands of the lessor, the assignee should not be charged, although the covenant was for the covenantor and 'his assigns.' The two principles thus settled have always been acknowledged as law; that the assignee, when not named, is not bound by a covenant, except it relates to a thing *in esse* at the time; and that when named, he is not bound by a covenant collateral to the land, but only for things to be done on or concerning the land."

The rules in *Spencer's case* have been severely criticized by various Courts of this country and of England, and the modern trend has been more to relax than to follow them. In our case of *Morse v. Garner,* 1 Strob., 514 (32 S. C. Law, 514), 47 Am. Dec. 565, which involved a covenant for the use of a ferry, and wherein partition of the estate was similar to the one in question and these ferry rights were bound in with the partition, and the lands had been subsequently conveyed to others, it was held, *inter alia,* that even if the agreement was a covenant, it was not a covenant real which inhered in the land or ferry, and passed with either so as to bind the defendant, as assignee. The following is quoted from this case:

"4 Cruise, 397, defines covenants real to be those 'which have for their object something annexed to, or inherent in,

or connected with land or other real property.' In Shepherd's Touchstone, they are defined to be 'such as do run with the realty, so much in the land, that he that hath the one hath or is subject to the other.' In *Spencer's case,* 5 Coke, 16a, they are described, as 'those which touch or concern the realty.' By the second resolution, in that case, it is affirmed that, though a covenant names assignees, yet, if the thing to be done be merely collateral to the land, the assignee shall not be charged; as if the lessee covenants to pay a collateral sum to the lessor or to a stranger, or to build on land of the lessor, not parcel of the demise, 'the assignee can no more be charged than any other stranger.' By the third resolution, it is affirmed, that if one lease personal goods for a time, and covenants for hire, and his assigns to return them, this covenant shall not bind the assignees, because there is not any privity or any reversion; but merely a thing in action, in the personalty, which cannot bind any but the covenantor, and his executors and administrators, who represent him. And so, if one demise land for years, with a flock of sheep, rendering rent, and covenant for himself and his assigns, to return the flock of sheep, yet the assignee shall not be charged with this covenant; for although the rent was increased in respect of the flock of sheep, yet the rent did not issue out of the stock, but only out of the land. Without ruling that point, it may be conceded, for argument, that in the terms 'realty' and 'other real property,' are comprehended not only land or real estate, property so called, but also chattel interests in land and real hereditaments.

"From these authorities, it appears to be an essential quality of a real covenant, that it relate to the realty, having for its object something annexed to, or inherent in, or connected with land or other real property; and that a personal covenant does not bind the assignee of a covenantor, even though expressly named, but charges only the executor or administrator; and that it makes no difference if such per-

sonal covenant is connected with real covenants, so as to form one entire consideration.

"The agreement, then, that the plaintiff should cross the ferry, toll free, if a personal covenant, *is not converted into a real covenant, because it forms part of the consideration for the partition of the land, but must have the same effect, as if it were an independent contract."* (Italics added.)

This case from our reports is quoted primarily to show that a covenant in a deed is not made one running with the land because it is a part of the consideration expressed in the deed. Indeed, it could not be otherwise; such would destroy every rule on the subject, and whether a covenant would be one real, or one personal, would not depend upon the law, but its vehicle of carriage.

As a rule, covenants relating to personalty as here do not run with the land.

"In order to run with the land (the covenant) must respect the thing demised, and the act covenanted to be done or omitted must concern the land, or the estate conveyed." 15 C. J., 1240.

Typical are covenants of seizin, of right to convey of quiet enjoyment, against encumbrances and for further assurance. *Jeter v. Glenn,* 9 Rich., 374 (43 S. C. Law, 374). Covenants to pay taxes and assessments, covenants as to repairs to the demised property, covenants as to rents thereof, and in some jurisdictions covenants as to party walls are held to run with the land. As to covenants against taxes and assessments, the case of *Cheves v. City Council,* 140 S. C., 423, 138 S. E., 867, is in point, though on the equity side of the Court and between the original parties. If A owns a tract of 100 acres served throughout by a ditch, and sells the one-half thereof to B with covenants to keep the ditch open and clean throughout for the benefit of the entire tract, the execution and delivery would bind A; the acceptance, B and his assigns, and a covenant is created that is at once a benefit to one and a burden to the other; but it concerns the land, respects the thing demised, its value and mode of enjoyment.

In the Georgia case of *Rosen v. Wolff,* 152 Ga., 578, 110 S. E., 877, 880, 881, in discussing covenants personal and covenants real, the Court had this to say:

"There is much confusion and conflict in the authorities upon the subject of what constitutes a personal covenant and what constitutes a covenant running with the land. If a covenant is such that its performance or· nonperformance must affect the nature, quality, value, or mode of enjoyment of the demised premises, it is not a mere personal covenant, but one that runs with the land and binds assignees of the covenantor as well as the covenantee and his personal representative. *Atlanta Consolidated St. R. Co. v. Jackson,* 108 Ga., 634, 638, 34 S. E., 184; *A. K. & N. Ry. Co. v. Mc-Kinney,* 124 Ga., 929, 53 S. E., 701, 6 L. R. A. (N. S.), 436 110 Am. St. Rep., 215; *Muscogee Mfg. Co. v. Eagle & Phenix Mills,* 126 Ga., 210, 54 S. E., 1028, 7 L. R. A. (N. S.), 1139.

"The subject-matter of the covenant need not be the land demised. The thing to be done may be on other land than that demised. *Sampson v. Easterby,* 9 Barn. & Cress., 505; *Easterby v. Sampson,* 6 Bing., 644; *Dewar v. Goodman,* H. L. A. C., 72, 77; *Ricketts v. Enfield Church Wardens* (1909), 1 Ch., 544; *Lyle v. Smith* (1909), K. B. 2 Ir., 58; *Norman v. Wells,* 17 Wend. (N. Y.), 136; *A. K. & N. Ry. Co. v. McKinney,* 124 Ga., 929, 53 S. E., 701, 6 L. R. A. (N. S.), 436, 110 Am. St. Rep., 215; *Muscogee Mfg. Co. v. Eagle & Phenix Mills, supra.* Whether a covenant will or will not run with the land does not depend so much on whether it is to be performed thereon as on whether it tends directly or necessarily to enhance its value or render it more beneficial and convenient to those by whom it is used or occupied. *A. K. & N. Ry. Co. v. McKinney, supra.*

"Many cases hold that the question whether a covenant will or will not run with the land does not depend so much on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value

or render its use more beneficial and convenient to those by whom it is owned or occupied; and, that if this be the case, every successive assignee of the land will be entitled to enforce the covenant. 15 C. J., 1240, § 54, note 52. The decisions are in sharp disagreement as to whether this stipulation constitutes a covenant running with the land, or is a personal covenant which can only be enforced against the covenantor. Where A demised a sawmill and covenanted not to establish another sawmill on the same mill stream, it was held that the covenant ran with the land demised. *Norman v. Wells,* 17 Wend. (N. Y.), 136. Lessors leased certain land to B, with a covenant by them and their assigns with B not to build beyond a certain line on the adjoining premises. B assigned to the plaintiff, who sued upon the covenant. It was held that, even though this covenant related to the adjoining land, it was for the benefit of, and so ran with, the land demised. *Ricketts v. Enfield Church Wardens* (1909), 1 Ch., 544. A man conveyed land in a village adjoining an open space, called a public square, which he had dedicated to the public as such, and covenanted not to build on the dedicated ground. The grantee sold to another, who brought his bill to restrain the original grantor in an attempt to build contrary to his covenant, and it was held that the covenant ran with the land. *Trustees of Watertown v. Cowen,* 5 Paige (N. Y.), 510, 514.

"The foregoing are typical of the cases which hold that such a covenant runs with the land. Covenant in a lease of a lot in a town by the owner of such town that the lessee should have the exclusive right to keep a store in the town for a period of 10 years is not binding upon persons leasing other lots in the same town from such owner although they have notice thereof. *Taylor v. Owen,* 2 Blackf. (Ind.), 301, 20 Am. Dec., 115. K conveyed to F a quarry in Longmeadow of six acres, and covenanted with F and his assigns that he would not open or work, or allow any other person or persons to open or work, any quarry or quarries on his farm in said Longmeadow. By mesne conveyances plaintiffs

became possessed of the quarry conveyed to F, and the defendants of the surrounding land referred to in the covenant. The defendants were quarrying stone on this land, and the plaintiffs filed their bill in equity for an injunction. It was held that such stipulation was a personal covenant, and not one running with the land. Justice Holmes held that this covenant did not 'touch or concern' or 'extend to the support' of the thing conveyed, and attached new and unusual burdens to land, which cannot be done by way of either benefit or burden. *Norcross v. James,* 140 Mass., 188, 2 N. E., 946. These are typical of the cases holding such a covenant a personal one."

In all of the cases (and with all the sharp conflicts since the time of the resolutions in *Spencer's case*), the decisions are to the effect that the covenant must relate to the realty demised, having for its object something annexed to, or inherent in, or connected with the land; that its performance or non-performance must affect the nature, quality, value, or mode of enjoyment of the demised premises; and in this State, certainly, the mere fact of its being a part of the consideration is not sufficient. *Morse v. Garner, Id.* The covenant must have relation to the interest or estate granted, and the act to be done must concern the interest created or conveyed. *Conduitt v. Ross,* 102 Ind., 166, 26 N. E.. 198. So if a lessee covenants for himself and his assigns to make a new wall upon a part of the thing demised, the assignee is bound. But if the thing to be done is collateral to the land and does not touch or concern the thing demised, then the assignee is not charged although named in the covenant. A covenant is merely personal if it does not affect the land demised. *Conover v. Smith,* 17 N. J. Eq., 51, 86 Am. Dec., 247. Covenants which are personal and collateral to the land do not run with the land. 15 C. J., 1243.

So a covenant is personal when it has no relation to the land conveyed (*Howard Manufacturing Co. v. Water Lot Co.,* 53 Ga., 689; *Wells v. Benton,* 108 Ind., 585, 8 N. E., 444, 9 N. E., 601); or is not connected with the title

(*Harsha v. Reid,* 45 N. Y., 415); and all covenants concerning lands are not real covenants (*Cole v. Hughs,* 54 N. Y., 444, 13 Am. Rep., 611). So a covenant to pay for land in a particular way, as by paying off certain judgments against the grantor which are not liens, is a covenant personal, and not real. *Wells v. Benton,* 108 Ind., 585, 8 N. E., 444, 9 N. E., 601.

As the stipulations set out in this deed concerning electric current do not respect the thing demised and the act covenanted to be done does not concern the land, as it does not affect the nature, quality, the value, or the mode of enjoyment of the $1\frac{1}{4}$ acres demised, the covenants are necessarily personal and not binding on the defendant.

As under no view of the case is the Lexington Water Power Company liable to the plaintiff, the judgment is reversed with instructions to enter up judgment for the defendant under Rule 27.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Fishburne concur.