22798

SEA PINES PLANTATION COMPANY, Respondent v. William M. WELLS, III, Appellant.

(363 S. E. (2d) 891)

Supreme Court

*Thomas E. McCutchen* and *Herbert W. Hamilton,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for appellant.*

*Frank H. Clabaugh,* of *Dowling, Sanders, Dukes, Svalina, Ruth & Williams,* Hilton Head, *for respondent.*

Heard May 5, 1987.

Decided Nov. 9, 1987.

FINNEY, Justice:

Appellant William M. Wells, III, appeals trial court's decision that he violated certain restrictive covenants of respondent Sea Pines Plantation Company (Sea Pines) and the trial court's issuance of a mandatory injunction regarding those violations as a remedial device. We affirm the trial court's decision.

Wells bought three lots and a partially completed house in Sea Pines Plantation Subdivision on Hilton Head Island. During negotiations for the purchase of the property, Wells received a set of construction plans for the house that had been approved by the Architectural Review Board of Sea Pines Plantation (ARB). He hired a registered architect to act as contractor and construction manager to complete the house. After Wells began construction, ARB officials objected to specific unapproved portions of the work. Appellant's representatives met with the ARB and his attorney prepared a memorandum of agreement, which was rejected by the ARB. Consequently, Sea Pines brought an equity action to enjoin Wells from modifying the construction of his house and relandscaping his property.

Appellant denied violating the restrictive covenants and asserted that they were vague, unenforceable and were arbitrarily and unreasonably applied. Appellant further contends that either Sea Pines was estopped to enforce the restrictive covenants or had waived the restrictions because of existing uses permitted in the subdivision.

A temporary restraining order initially enjoined Wells from completing the loft area of his house and prohibited further landscaping activities. Upon dissolution of this order by the trial court, Wells received ARB approval for further modifications to the residence and resumed construction. During this phase, Wells made other changes without the required approval. As a result, Sea Pines attempted to amend its complaint to include allegations of public nuisance, private nuisance and an award of attorney's fees. Its motion to amend the complaint was denied. However, the court heard evidence and ruled on these additional alleged violations.

At the conclusion of the trial, the court entered its order directing Wells to remove the flagpole, jacuzzi and satellite antenna from the roof; remove the wrought iron fence, gate,

beach walkway, shower, and the no trespassing sign; remove all trees, bushes, walls, fences and other structures he had placed or caused to be placed in the view easements; change the loft area and relandscape the property.

## I.

First, appellant argues that the trial court erroneously concluded that the restrictive covenants were applicable and prohibited the various modifications made without the Architectural Review Board's approval. Specifically, appellant contends that the trial court's conclusion is a result of its failure to strictly interpret the covenants in favor of free use of property.

The historical disfavor of restrictive covenants by the law emanates from the widely held view that society's best interests are advanced by encouraging the free and unrestricted use of land. *See, Hamilton v. CCM, Inc.*, 274 S. C. 152, 263 S. E. (2d) 378 (1980); *Edwards v. Surratt*, 228 S. C. 512, 90 S. E. (2d) 906 (1956). *See also, Knox v. Scott*, 62 N. C. App. 732, 303 S. E. (2d) 422 (1983). Courts tend to strictly interpret restrictive covenants and resolve any doubt or ambiguities in a covenant on the presumption of free and unrestricted land use. *Edwards v. Surratt, supra.* Thus, to enforce a restrictive covenant, a party must show that the restriction applies to the property either by the covenant's express language or by a plain unmistakable implication. *Hamilton v. CCM Inc., supra; see also, Davey v. Artistic Builders, Inc.*, 263 S. C. 431, 211 S. E. (2d) 235 (1975).

The rule of strict construction governing restrictive covenants does not preclude their enforcement. A restrictive covenant will be enforced if the covenant expresses the party's intent or purpose, and this rule will not be used to defeat the clear express language of the covenant. *Palmetto Dunes v. Brown*, 287 S. C. 1, 336 S. E. (2d) 15 (1985); *Hamilton v. CCM, Inc., supra. See generally Vickery v. Powell*, 267 S. C. 23, 225 S. E. (2d) 856 (1976); *Hoffman v. Cohen*, 262 S. C. 71, 202 S. E. (2d) 363 (1974). This restrictive covenant is a voluntary contract between the parties. Courts shall enforce such covenants unless they are indefinite or contravene public policy. *Vickery v. Powell, supra.* We conclude that the court did not err in finding the

restrictive covenants enforceable.

Second, appellant alleges that even if the restrictive covenants were applicable, respondent's disapproval of the modifications for aesthetic reasons was arbitrary. Appellant, relying upon *Boiling Springs Lakes Division of Reeves Telecom Corp. v. Coastal Services Corp.*, 27 N. C. App. 191, 218 S. E. (2d) 476 (N. C. Ct. App. 1975), contends that some standard for approval of modifications must be clearly set out in connection with a general plan or scheme of development.

In *Palmetto Dunes*, the South Carolina Court of Appeals held that a refusal to approve plans for aesthetic reasons will be upheld where the covenant or appropriate authority has provided guidelines for enforcement and expressed the purpose of the restrictive covenant. 336 S. E. (2d) at 20. *Cf. Snowmass American Corp. v. Schoenheit*, 524 P. (2d) 645 (Colo. App. Ct. 1974) (court held purpose of all covenants was to establish and maintain residence quality, value, and attractiveness in spite of the fact that no specific aesthetic considerations were contained in covenant).

The record clearly establishes that the ARB's rejection of appellants' modifications based on aesthetic considerations was not arbitrary but bears a sufficient relation to the subdivision's general plan of development. Appellant knew that ARB approval was a prerequisite to modifications or construction; yet, he proceeded to make modifications without approval. We hold that the trial court correctly determined that the restrictive covenants applied to appellant's property and were not arbitrarily or discriminately enforced.

Having established that the restrictive covenants are applicable to appellant's property and were not arbitrarily enforced, we address the issue of whether appellant, in fact, violated the covenants. In making such a determination, the trial judge's rulings must be examined with respect to each alleged violation. A trial court's decision should be affirmed unless the decision is unsupported by the evidence or influenced by error of law. *Jacobs v. Association of Independent Colleges and Schools*, 265 S. C. 459, 219 S. E. (2d) 837 (1975). *See also, Odom v. Odom*, 248 S. C. 144, 149 S. E. (2d) 353 (1966); *Hicks v. Giles*, 241 S. C. 129, 127 S. E. (2d) 196 (1962).

A. Appellant alleges that the trial court erroneously concluded that the flagpole, satellite dish and jacuzzi were "structures" as contemplated by the covenant and necessitated ARB approval. The trial court found that the ARB could reasonably refuse to approve these rooftop structures based upon the subdivision's common scheme of development and the broad powers contained in the covenant.[1] We agree.

Although a flagpole, jacuzzi or satellite dish were not expressly named and prohibited, a particular use or structure may be forbidden by the covenant's general language without an express designation or label. *See, e.g., Nance v. Waldrop*, 258 S. C. 69, 187 S. E. (2d) 226, 227 (1972). The covenant prohibited alterations affecting the exterior of any building or structure.[2] We hold that the trial court properly determined that these rooftop structures are prohibited unless prior approval is obtained from the ARB. Appellant asserts further that the presence of flagpole and satellite dishes on other property within the subdivision estops respondent from enforcing the covenant against him. We find this contention to be without merit because of the dissimilarities between appellant's structures and those on neighboring property.

B. Appellant next avers that the trial court erroneously concluded that he breached the restrictive covenants by maintaining and failing to obtain prior approval for landscape modifications and by obstructing the

---

[1] The covenant states in pertinent part:

No building, fence or other structure shall be erectd, placed or altered on any lot in such residential area until the proposed building plans, specifications, exterior color or finish, plot plan (showing the purposed location of such building or structure, drives and parking areas) ... shall have been approved in writing by Sea Pines Plantation Company, ... Refusal of approval of plans, location or specifications may be based by the company upon any ground, including purely aesthetic conditions, which in the sole and uncontrolled discretion of the Company shall seem sufficient. No alterations in the exterior appearance of any building or structure shall be made without like approval by the company.

[2] *Id.*

view of second-row lot owners.[3] The covenant expressly prohibits cutting or removing trees without ARB approval. Appellant nevertheless, *inter alia*, removed trees from his property, constructed a beach walkway, a fence, and planted hedges and trees without ARB approval. Moreover, appellant's unapproved planting of trees, shrubbery and the erection of a wall obstructed the view easements of the second-row lot owners. *See generally, Ezer v. Fuchsloch*, 99 Cal. App. (3d) 849, 160 Cal. Rptr. 486 (1979); *Moch v. Schulman*, 226 Cal. App. (2d) 263, 38 Cal. Rptr. 39 (1964). In view of the covenant's express prohibition against such landscape modifications, we find no error in the trial court's decision.

C. Appellant contends further that the trial court erred in concluding that his modified loft constituted a third story, in violation of the restrictive covenant.[4]

There is conflicting testimony and evidence concerning whether the loft area constitutes a third story.

Respondent asserts that appellant's loft modification created an impermissible third story even though the height of the house, as previously approved, remained unchanged. The trial judge, as trier of the fact, conducted an on-site inspection of the premises. Based upon his personal observation and the Southern Building Code's definition of a story, he concluded that the modified loft constituted a third story. We find that there is adequate evidence in the record to support the trial court's conclusion. However, this Court

---

[3] The covenant provides in part:

Owners of oceanfront lots may not remove, reduce, cut down or otherwise lower the elevation of sand dunes and ridges located on the rear (oceanside) half of any oceanfront lot to a level lower than fourteen (14) feet above the mean low water, except with the written permission of the company.

There shall be reserved for the use and benefit of adjacent second-row low owners an easement of view running along the side boundary lines of oceanfront lots for a width of five (5) feet on each side of each oceanfront lot. . . . [T]he purpose of this easement is to enable second-row lot owners to maintain permanently an open area sufficiently unobstructed to afford a direct view of the ocean and direct circulation of ocean breezes. Owners of oceanfront lots may not erect any fence, wall or other structure interfering with such easements.

[4] A detailed explantation of the construction or architectural complexities regarding the loft area without the photographs and numerous exhibits which are before the Court would serve no purpose other than frustrating the reader.

may affirm a trial judge's decision on any ground supported by the record. *Westbury v. Bauer*, 284 S. C. 385, 326 S. E. (2d) 151 (1981). A correct decision by a trial court will not be reversed because its decision rested on the wrong ground or insufficient reason. *Id. See also, Moorhead v. First Piedmont Bank and Trust Co.*, 273 S. C. 356, 256 S. E. (2d) 414 (1979).

It is clear that appellant voluntarily entered into this ██ █ contract making him subject to the restrictive covenants. It is uncontradicted that the restrictive covenants appeared in appellant's chain of title, that he was cognizant of the covenants, and knew that no exterior alterations to his residence were to be made without ARB approval. The record reveals that appellant has failed to establish his claims of estoppel, laches or waiver, which would bar respondent's enforcement of the covenant. The fact that appellant changed the loft area without ARB approval is an additional basis to sustain the trial court's conclusion that appellant violated the restrictive covenant, and that the enclosed loft area must be removed. Accordingly, we affirm the trial court's decision.

## II.

Appellant next argues that the trial court erroneously ██ issued a mandatory injunction when the cost to appellant exceeds respondent's damages. Appellant asserts that the mandatory injunction will not benefit other property owners nor is it supported by the evidence; thus the issuance of the mandatory injunction is an abuse of discretion.

A court does not automatically issue a mandatory injunction once it finds a restrictive covenant has been violated. The court must balance the equities between the parties; and if the harm to the defendant outweighs the plaintiff's benefit, no relief will be granted. *Hunnicutt v. Rickenbaker*, 268 S. C. 511, 234 S. E. (2d) 887 (1977). Although the issuance of a mandatory injunction depends upon the equities between the parties, the decision of whether to issue such relief rests in the court's discretion. *Id.* 234 S. E. (2d) at 889. *See also, Metts v. Wenberg*, 158 S. C. 411, 155 S. E. 734 (1930). Respondent argued that the balancing of equities test is inapplicable in this case where appellant's actions or inaction is

the direct cause of the mandatory injunction's issuance. Even though the injunctive remedy may cause some economic hardship to appellant, injunction have routinely been granted in such instances. *See, Palmetto Dunes v. Brown, supra; Sprouse v. Winston,* 212 S. C. 176, 46 S. E. (2d) 874 (1948). *See generally, Tubbs v. Brandon,* 374 So. (2d) 1358 (Ala. 1979). We are of the opinion that the only effective relief is injunctive relief and, accordingly, conclude that the trial judge did not abuse his discretion in issuing the mandatory injunction. *Renney v. Dobbs House, Inc.,* 275 S. C. 562, 274 S. E. (2d) 290 (1981).

### III.

Finally, appellant argues that the trial court erred in ██ considering issues not mentioned initially in the complaint or by amendment.

In this instance, the complaint alleged five specific violations: (1) the loft area; (2) use of security lights; (3) landscaping; (4) beach trust violations; and (5) the satellite antenna. However, the court took testimony at trial concerning a number of violations not specifically mentioned in the complaint or by later amendment. South Carolina Rule of Civil Procedure 15(b) permits the presentation of evidence within the issues made by the pleadings. *See, Windham v. Honeycutt,* 279 S. C. 109, 302 S. E. (2d) 856 (1983). The issues contained in the complaint alleged violations of the restrictive covenant. The proof offered to sustain the violations came within the general framework of the pleadings. Nevertheless, any variance between the pleadings and the proof offered to sustain them will not be deemed material if the adverse party is not surprised or misled to prejudice in maintaining a defense on the merits. *Langston v. Fiske-Carter Construction Co.,* 180 S. C. 113, 185 S. E. 62 (1936). Accordingly, we conclude that the proof and the trial court's subsequent order fell within the reasonable scope of the issues framed by the pleadings. Moreover, even if some variance between the pleadings and the proof proffered at trial did exist, the variance was not prejudicial because appellant had notice of the facts and circumstances surrounding the suit and had full opportunity to make a timely

response. Thus, the trial court's decision on this matter is affirmed.

Affirmed.

NESS, C. J., GREGORY and HARWELL, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.