1216

William P. CHARPING, Appellant v. J. P. SCURRY & COMPANY, INC., and The Citizens and Southern National Bank of South Carolina, Respondents.

(372 S. E. (2d) 120)

Court of Appeals

*D. Reece Williams, III, William F. Halligan, John S. Taylor, Jr., Mason G. Alexander, Jr.,* and *Frank B. Knowlton,* all of *Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford,* Columbia, *for appellant.*

*James R. Barber, III,* and *Aphrodite Karvelas,* both of *Todd & Barber,* Columbia, *for respondent.*

Heard May 25, 1988.

Decided Aug. 29, 1988.

CURETON, Judge:

This is an appeal from an order granting summary judgment to J. P. Scurry and Company, Inc., and dismissing the complaint of William P. Charping with prejudice. The dispute involves real property. The issue is whether a restrictive covenant contained in a deed is a real or a personal covenant.

Mary Lemon Owens Townsend acquired title to two contiguous parcels of land in Columbia, South Carolina, during 1976. One parcel contained five unimproved lots and faced Forest Drive. The other parcel contained three lots with a residence and faced Stratford Road. The properties abutted along a part of their rear common boundary.

In 1980, Townsend sold the Forest Drive property containing the five lots to a partnership. The deed contained a restriction stating "[t]he above property is to be developed into a maximum of four (4) residential lots, each of which is to be used solely for the construction of a single family residence." In 1983, Townsend sold the Stratford Road property to William Charping. At the time of closing she told Charping about the residential restriction on the Forest Drive property, but the deed to Charping made no reference to the restriction. Thereafter, in August 1985, Townsend executed a "Modification of Restriction" which purportedly modified the restriction on the Forest Drive property to increase the number of residential lots from four to six. At that time, she had no ownership interest in either parcel. The partnership conveyed the Forest Drive property to J. P. Scurry & Company, Inc., in late 1985. Charping filed a complaint seeking a declaratory ruling holding the Forest Drive property was subject to the four-lot restriction and requesting an injunction to prevent development by Scurry beyond that number. The record contains no indication Scurry plans to develop the property for non-residential uses. As we view the record, the issue is limited to the question of the maximum number of residences that may be built on the lots.

Scurry filed a motion for summary judgment on the ground Charping had no standing or right permitting him to enforce the four-lot restriction. The court considered the pleadings, certain stipulated facts, five requests for admission, and the "Modification of Restriction" in making its

determination. The trial court concluded Townsend's intent was to create a personal covenant as opposed to a covenant running with the land. The court granted Scurry's motion.

Charping states in his brief and both parties contended at oral argument that the facts are undisputed. Both parties specifically argue there is no genuine issue of material fact regarding Townsend's intent. Basically, Charping argues the stipulated facts support his contention Townsend's intent was to create a covenant running with the land as opposed to the opposite argument of Scurry that Townsend's intent was to create a personal covenant.

South Carolina recognizes a historical disfavor for restrictive covenants based upon the view that the best interests of society are advanced by the free and unrestricted use of land. *Sea Pines Plantation Co. v. Wells,* 294, S. C. 266, 363 S. E. (2d) 891 (1987). Courts tend to strictly interpret restrictive covenants and a party seeking to enforce a covenant must show the covenant applies to the property either by its express language or by a plain and unmistakable implication. *Sea Pines,* 294 S. C. 266, 363 S. E. (2d) 891; *Edwards v. Surratt,* 228 S. C. 512, 90 S. E. (2d) 906 (1956).

Charping was not a party to the 1980 deed between Townsend and the partnership. He seeks to enforce the covenant by claiming it is a covenant running with the land, and as a subsequent purchaser of Townsend's property, he may enforce it. Given the rule in South Carolina of strictly construing restrictive covenants and favoring unrestricted use of land, the burden was on Charping to prove Townsend's clear intention to create a covenant that would run with the land. *Edwards,* 228, S. C. 512, 90 S. E. (2d) 906; *see Stegall v. Housing Authority of Charlotte,* 278 N. C. 95, 178 S. E. (2d) 824 (1971) (burden of showing restrictions in a deed are covenants running with the land is upon the party claiming the benefit of the restriction); *see also Traylor v. Holloway,* 206 Va. 257, 142 S. E. (2d) 521 (1965) (the party who seeks to enforce a covenant restricting free use of land has the burden of proving it prohibits the acts of which he complains) and *Anno.,* 51 A. L. R. (3d) 556 Section 4[b] (1973) and the many cases cited therein.

A restriction limiting the use of property to residen-

■ tial purposes will ordinarily be construed to touch and concern the land. *Cf. Epting v. Lexington Water Power Co.*, 177 S. C. 308, 181 S. E. 66 (1935). However, this is only one of the tests for determining whether a covenant runs with the land. As the parties recognize, there must also be an indication that the parties intended for the covenant to run with the land. *Cheves v. City Council of Charleston*, 140 S. C. 423, 138 S. E. 867 (1927). In this case, the intention of the parties in placing the restrictions on the lots must be determined as of the time Townsend conveyed title to the partnership. *Stegall*, 278 N. C. 95, 178 S. E. (2d) 824; *Anno.*, 51 A. L. R. (3d) 556, 579 (1973). The language of the subject covenant does not express such an intention. The covenant does not refer to Townsend's remaining property, nor does it indicate that it should benefit her heirs, successors and assigns.

In the absence of express language of intention, Charping claims the benefit of a presumption at law. This presumption, he argues, implies that absent facts showing a contrary intent, when the owner of realty sells a portion of his land and imposes use restrictions upon the portion conveyed, such restrictions are presumed to be imposed for the benefit of the retained land. *See Wardlaw v. Southern Ry. Co.*, 199 Ga. 97, 33 S. E. (2d) 304 (1945).

Although not expressed in exactly the same language, a similar argument was made in *Edwards v. Surratt*, 228 S. C. at 516, 90 S. E. (2d) at 908. The plaintiffs argued a restriction for residential use placed in a deed conveying approximately three acres was intended to be for the benefit of the remaining property of the grantor and thereby enforceable by subsequent grantees of the remaining property. *Id.* The Supreme Court held the burden of proof was on the subsequent grantees to show the grantor's intention and they failed to meet the burden of demonstrating intention by plain and unmistakable implication. *Edwards*, 228 S. C. at 521, 90 S. E. (2d) at 911. The court did not discuss the presumption of intent as argued by Charping, but looked for evidence of the grantor's intent from the surrounding circumstances. We therefore reject the presumption urged by Charping.

When a motion for summary judgment is made, an adverse party may not rest upon the mere allegations or de-

nials of his pleadings, but must set forth specific facts showing there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U. S. 317, 106 S. Ct. 2548, 91 L. Ed. (2d) 265 (1986). In the context of this case, Charping must show by affidavit or otherwise facts regarding the grantor's intention to benefit the land now owned by him when she restricted the property sold to the partnership.[1]

Charping has failed to produce any evidence of Townsend's intent as would constitute a genuine issue of fact. The stipulated facts indicate Charping entered into the contract to purchase in ignorance of the restriction and did not learn of the restriction until Townsend mentioned it at closing. Charping's argument that Townsend's remarks to him at the closing regarding her having restricted the Forest Drive property to residential use constitutes sufficient evidence of Townsend's intention is without merit. An unappealed finding by the trial court states, "Townsend did nothing [at the closing] to affirm or reaffirm that the restriction was to run with [Charping's] land and was for [his] benefit." The record is devoid of further evidence which might assist in determining Townsend's intent at the time of the creation of the covenant.

Under the evidence in this record, the decision of the trial court is

Affirmed.

GOOLSBY, J., concurs.

GARDNER, J., dissents in separate opinion.

GARDNER, Judge (dissenting):

I dissent. This case presents a novel question to the courts of South Carolina.

The restriction of this case is simple; the import of the language used is clear and easily understood. It simply limits the use of the Forest Drive property to a maximum of four single-family residences. All parties to this action agree

---

[1] We have considered remanding for further development of the facts. However, Charping's attorney stated at oral argument that the parties had stipulated to all of the facts regarding Townsend's intent. Thus, it would serve no useful purpose to remand.

that the words used constitute a restriction. The issue of the case is whether the words constitute a real restrictive covenant, that is, one which runs with the land. The criteria for determining whether a restriction is a real or personal restrictive convenant are established by the case of *Epting v. Lexington Water Power Co.*, 177 S. C. 308, 181 S. E. 66 (1935). As will later be noted, I would hold that the subject restriction is a real restrictive covenant because it affects the use of the subject land; it effects the quality and mode of enjoyment of the land and it concerns the interest in the land which was conveyed; its purpose is to alter the legal rights which otherwise would flow from the ownership of the land. And by the simplicity of the words used all this is to me abundantly clear.

The majority emphasizes that (1) restrictive covenants are historically disfavored, (2) courts favor the free use of land and (3) a restriction is considered a real restrictive covenant only if it is clear that it was the intent of the grantor as evidenced by the language used in the instrument creating the covenant. Despite all of these platitudes, restrictions meeting the test of *Epting, supra,* are uniformly *enforced. See Sea Pines Plantation Co. v. Wells,* 294 S. C. 266, 363 S. E. (2d) 891 (1987) (stating principle that the rule of strict construction against restrictive covenants will not be used to defeat the clear, express language of the covenant) and West's South Eastern Digest (2d) *Covenants* Key No. 49 (1981).

*Epting* is the only South Carolina authority which deals with how to determine if a restrictive covenant is real or personal. *Epting* is quick to emphasize that the language creating the restriction must clearly reflect as intent by plain language to create a restrictive covenant. If this be so, as it is in the instant case, according to *Epting,* the restriction is a restrictive real covenant if it relates to the realty demised, having for its object something annexed to, or inherent in, or connected with the land; its performance or nonperformance must affect the nature, quality or value or mode of enjoyment of the demised premises; it must have relation to the interest or estate conveyed and the act to be done must concern the interest created or conveyed.

Other authorities have reduced the rule to simply whether

the restriction is one which touches and concerns the land itself. 20 Am. Jur. (2d) *Covenants, Conditions and Restrictions* Section 30 (1965); 21 C.J.S. *Covenants* Section 54 (1940).

And I observe that in determining whether restrictions "touch or concern" the subject land, courts must decide in each case whether the purpose of the restriction is to alter the legal rights that otherwise would flow from the ownership of the land. 21 C.J.S. *Covenants* Section 54 (1940).

Applying the above principles to the case before us, I would hold that the subject restriction does alter the legal rights which flow from the ownership of the Forest Drive property. Simply stated this land was restricted in its use to a maximum of four single-family dwellings. The language is clear; only dwelling houses can be erected on the property and the language is equally clear that the Forest Drive property is limited to a maximum of four lots. The language is susceptible of only one reasonable meaning and that is to alter the use of the land in the two concepts mentioned. The two concepts have as their object the inherent use of the land and are connected with the land and otherwise meet the test of *Epting*. I would therefore hold that the subject restriction is a real restrictive covenant. And, accordingly, I would hold that the appealed order was erroneous in holding the restriction to be personal. *Epting* clearly holds that a personal covenant is one which has no relation to the land conveyed, a concept patently antithetic to the situation before us. And I would so hold, although my brothers of the majority would hold that the restriction has no relationship to the land conveyed and is therefore a personal covenant.

I would also hold that Charping, as Townsend's grantee and successor in interest, is entitled to enforce the covenant.

Whether the home tract now owned by Charping has as an incident of its ownership the benefit of enforcing the covenant Townsend imposed on the Forest Drive property would be determined by nearly all courts by whether Townsend, as the original grantor, intended to benefit her home tract. And this intention, it is generally held, must be drawn from the language of the instrument itself and the circumstances surrounding the original execution of said instrument. Annotation, *Who May Enforce Restrictive Covenant or Agree-*

*ment as to Use of Real Property*, 51 A. L. R. (3d) 556 (1973); *Restatement of Property* Section 544 comment c (1944). At the closing of the sale of the Stratford Road property by Townsend to Charping, the record reflects that Townsend told Charping of the restriction she had placed on the Forest Drive property. The details of the conversation are not of record; the record simply reflects that the attorneys agreed that at the time of the closing the conversation took place. It is reasonable, I submit, to assume that the conversation went something like this. TOWNSEND—"You know, I imposed a restrictive covenant limiting the use of the land behind this property I am conveying you. When I conveyed it to that real estate firm, I made it plain by imposing a restrictive covenant on it that it could be used only for single-family residences and I also made it plain by imposing a restriction that the property behind the house which you are buying from me can only be used for a maximum of four residences."

Does not the very fact that at the time of closing Mrs. Townsend told Charping about the restrictive covenants imposed upon the Forest Drive property constitute evidence that at the time she imposed the restriction she intended it to be a benefit to her home tract located on Stratford Drive? Of course it does. There would have been no other reason for her to tell Charping about the restriction at the very time she was conveying her home tract to Charping, who ostensibly was to use the property as his home.

And I would observe, parenthetically, that some courts recognize a presumption in cases such as the ones before us of an intent to benefit the land retained;[1] this makes sense because something as serious as the imposition and acceptance of a real restrictive covenant is not the result of caprice or whim but a manifestation of an intent, design and purpose. No such presumption exists in this state but the logic supporting such a presumption in and of itself bolsters the other evidence supporting the proposition that Townsend intended to benefit the Stratford Road property at the time she conveyed the Forest Drive property, which was at the time her backyard.

---

[1] *See* Annotation, *Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property*, 51 A. L. R. (3d) 556, 582, Footnote 14 (1973).

Aside from the clear evidence of intent reflected by the words used in the deed before us the evidence of Townsend's telling, in effect, Charping that the restriction was an incident of the title to the Stratford Road property which she was conveying to Charping, there are elements of common knowledge and the experience surrounding this situation of which this court should take judicial notice. Backyard neighbors are important to homeowners; common sense and common experience dictate this truth, and I would so hold. And I would also hold that the maintenance of a neighborhood consonant with one's home is a natural and common desire. The desire on the part of the Owens to restrict the use of Lots 3, 4, 5, 6 and 7 located on Forest Drive to a maximum of four single-family residences is clear from the simple and plain language used. Townsend's desire to have a few homes consonant in size and quality with the one in which she lived rather than a "cluster" of small houses is also most understandable to me. At this time let me comment that the record discloses that after Townsend conveyed the property to the real estate firm, ostensibly on petition of the real estate firm, the zoning ordinances of Columbia were changed so that an exception permitting cluster houses was created for this property.

In closing, I would observe that the common law principle of tenure is existent in South Carolina. *See* Section 27-5-10, Code of Laws of South Carolina (1976) which limits tenure to free and common socage and Section 27-7-10, Code of Laws of South Carolina (1976), which sets forth our statutory deed form, which spells out the conveyance of hereditaments as incidents of the ownership of the land conveyed. In this state, then, in theory at least, when the intent to restrict use of property is clearly inferential from the language used, the tenure of the land conveyed is restricted, with the corresponding right in the grantor of enforcement of the restriction, which right is known in the common law as the seigniory. Admittedly, in this day and time, this theory is esoteric but, nevertheless, in my mind, it is most tenable. Nearly all courts in dealing with restrictive covenants of the kind before us refer to dominant and servient estates, which in reality amounts to a reaffirmance of the law of tenure as it existed in the common law. It would, in

my mind, be more appropriate to apply the principles of the common law which no doubt were evolved by learned men. And I think learned men in South Carolina retained tenure in the form of free and common socage in South Carolina. It is sad to me that these interesting principles of law seem to have been left on the wayside as the years have passed.

Footnoted is a bibliography of pertinent authorities other than those contained in the West reporter systems and Digests.[2]

In all due deference to my dear colleagues of this court, I respectfully dissent.

---

[2] Charles E. Clark, *Real Covenants and Other Interests Which "Run with Land"* (2d ed. 1947) and the voluminous authority cited therein. Exhaustive treatments of the subject are also found in 21 C.J.S. *Covenants* Section 22 and 54 through 86 (1940) and 20 Am. Jur. (2d) *Covenants, Conditions and Restrictions* Sections 29 through 42 and 165 through 322 (1965); the latter contains numerous A. L. R. citations which are recommended to the reader. Literally hundreds of judicial decisions treating the subject are cited in George W. Thompson, *Commentaries on the Modern Law of Real Property* Sections 3151 through 3174 (1962 replacement ed.) and Herbert Thorndyke Tiffany, *The Law of Real Property* Sections 848 through 875 (3d ed. 1939). *See also Restatement of Property* Sections 530 through 553 (1944).