593 S.E.2d 500

**Billye L. WEST, Misty M. West, Brandy B. West, Billye L. West, II, Tiffany T. West and Sabin S. West and The Heritage of Newberry, Inc., Respondents,**

v.

**NEWBERRY ELECTRIC COOPERATIVE, Inc., and Daniel P. Murphy, Appellants.**

No. 3737.

Court of Appeals of South Carolina.

Heard Oct. 8, 2003.

Decided Feb. 2, 2004.

Rehearing Denied March 18, 2004.

538

Thomas H. Pope, III, of Newberry, for Appellants.

James L. Bruner, of Columbia, for Respondents.

BEATTY, J.:

Newberry Electric Cooperative (NEC) appeals from the trial court's finding that Billye West, his children, and their family corporation (collectively, the Wests) were entitled to declaratory relief and ordering NEC to relocate a power line on the Wests' property. We affirm.

## FACTS

W.E. and Edith Matthews owned a 98–acre tract of land in Newberry County. In June 1955, they entered into a written agreement with NEC concerning the construction, operation, and maintenance of a power line on their property. The easement contained several restrictive covenants, including, NEC would not place more than four poles on the property, each pole were to be at least 45 feet tall, and the wires at least 35 feet from the ground "at the lowest point of sag." The easement also stated

> *should the premises over which these lines pass be developed* by cutting into streets or lots or otherwise, then and in that event, *with a reasonable time after notice and upon same conditions, [NEC] does hereby agree to remove its lines along a location along said street or streets or elsewhere to be designated by [the Matthews]* but at no time shall [NEC] be deprived of the privilege of crossing said property at the general proximity of the same location and in case said line is moved, [NEC] shall have a right to use approved methods of construction in re-locating said line.

(emphasis added).

The easement concludes with a habendum clause which states "TO HAVE AND TO HOLD the privileges herein granted unto [NEC], its successors and assigns forever." The document was never recorded, but rather was maintained on file at NEC. In 1989, NEC placed additional poles on the property, in essence violating the covenant, but the Matthews did not complain.

The Wests purchased the property from the Matthews estate in 1996. While unaware of the unrecorded 1955 easement, the Wests were aware of the NEC power line on the property. Indeed, Billy West spoke with Larry Longshore, the CEO of NEC, before acquiring the property. West wanted to know whether the line could be relocated. West testified Longshore assured him the line would be moved. Longshore admitted to only speaking with West about a possible relocation and maintained that he made no firm commitment to moving the line. However, both an NEC employee and a consulting engineer testified that Longshore

indicated a desire to move the line and asked that plans be drawn up for relocation.

In 1999, the Wests decided to develop the property for commercial use, prompting the need for water and sewer service. The City of Newberry (the City) could provide these utilities, but only if the Wests agreed to (1) annex the property into the City limits and (2) receive electric service from the City instead of NEC. The Wests agreed and the City annexed the property in January 2000. After the annexation, the Wests asked NEC to relocate the line, and NEC refused. The Wests then learned about the 1955 easement. They reiterated their request to move the line—this time arguing that NEC had violated the covenants of the 1955 easement. NEC again refused to relocate the line.

The Wests filed a complaint seeking the relocation of the power line, claiming trespass and promissory estoppel. They also sought a declaration that the 1955 easement was a real covenant that touched and concerned the subject property. The trial court found for the Wests on all three issues and ordered NEC to move the line.

## ISSUES

I.   Did the trial court err in concluding that the 1955 easement on the property was a real covenant?

II.  Did the trial court err in finding that the Wests had not waived their rights to complain to NEC under the 1955 easement?

III. Did the trial court err in finding that the Wests had met their burden of proving promissory estoppel?

IV.  Did the trial court err in finding that NEC had trespassed upon the property?

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). "The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge

without a jury." *Slear v. Hanna,* 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998). The doctrine of promissory estoppel is equitable in nature. *See* 28 Am.Jur.2d *Estoppel and Waiver* §§ 1, 55 (2000). "When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal." *Kiriakides v. Atlas Food Systems & Services, Inc.,* 338 S.C. 572, 580, 527 S.E.2d 371, 375 (Ct.App.2000) (citation omitted). In an action at equity, this court can find facts in accordance with its view of the preponderance of the evidence. *Doe v. Clark,* 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995).

## LAW/ANALYSIS

I. 1955 Easement

■ NEC argues the trial judge erred in finding the 1955 easement was a real covenant that ran with the land. We disagree.

■■ "A restrictive covenant runs with the land, and is thus enforceable by a successor-in-interest, if the covenanting parties intended that the covenant run with the land, and the covenant touches and concerns the land." *Marathon Fin. Co. v. HHC Liquidation Corp.,* 325 S.C. 589, 604, 483 S.E.2d 757, 765 (Ct.App.1997) (citations omitted). "[A] party seeking to enforce a covenant must show the covenant applies to the property either by its express language or by a plain and unmistakable implication." *Charping v. J.P. Scurry & Co., Inc.,* 296 S.C. 312, 314, 372 S.E.2d 120, 121 (Ct.App.1988) (citations omitted).

The very language of the 1955 easement reveals it to be a restrictive covenant that runs with the land. In the agreement, NEC promises to relocate the power line should the property ever "be developed." That agreement applies to the land. While the agreement does not specify whether this promise was to be honored only with respect to the Matthews, it does envision the future of the land and thus applies to the Wests. *See Marathon,* 325 S.C. at 604, 483 S.E.2d at 765 (explaining that a "restrictive covenant runs with the land, and is thus enforceable by a successor-in-interest, if the covenanting parties intended that the covenant run with the land, and

the covenant touches and concerns the land") (citation omitted).

Moreover, the restrictive covenants in the 1955 easement touch and concern the subject property. The Matthews insisted upon several conditions in order to maintain the safety and value of the property. The subject of the covenants is a power line connected to and crossing over the land. Adherence to the covenants by NEC directly affects the nature and value of the easement to both NEC and the Wests. The covenants in the easement also restrict the manner in which NEC can use the easement. The exact location of the easement on the property is not described in the easement, but its possible relocation is contemplated. The covenants were obviously intended to touch and concern the subject property. *See id.* While the language of the easement does not expressly state the covenants were intended to touch and concern the subject property, that is clearly implied. *See Charping,* 296 S.C. at 314, 372 S.E.2d at 121.

Accordingly, the trial judge did not err in holding the 1955 easement was a real covenant that ran with the land.

II.  Waiver

█ NEC argues the trial judge erred in failing to apply the doctrine of waiver. Specifically, NEC argues that, as neither the Matthews nor the Wests ever enforced several covenants in the 1955 easement, the right to file a complaint to NEC under the easement was waived.

This issue was neither addressed by the trial judge in the final order nor mentioned in the subsequent Rule 59(e), SCACR, motion. As such, it is not preserved for review by this court. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *see also Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding issue was not preserved where the trial judge did not explicitly rule on the appellant's argument and the appellant did not raise the issue in a Rule 59(e), SCRCP, motion to alter or amend the judgment).

III.   Promissory Estoppel

Since we have found that the 1955 easement is valid as to the Wests, we need not address the issue of promissory estoppel.

IV.   Trespass

██   NEC argues the trial judge erred in finding NEC had committed a trespass upon the property.

██   "Trespass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *Hedgepath v. American Tel. & Tel. Co.*, 348 S.C. 340, 357, 559 S.E.2d 327, 337 (Ct.App.2001) (citing *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct.App.2001)); *see also Ravan v. Greenville County*, 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct.App.1993) ("a trespass is any interference with one's right to the exclusive peaceable possession of his property.").

In the final order, the trial judge found, "the facts demonstrate that the NEC has violated the covenants in several ways, has technically forfeited its rights by reason of its violation and has committed trespass on the Property." This is the only mention of trespass in the final order. Assuming, without deciding, that the trial judge erred in finding NEC guilty of trespass without conducting a more thorough analysis, we conclude this was harmless error. The record supports both the trial judge's substantive findings and his ultimate conclusion that NEC violated the terms of the 1955 easement. *See, e.g., Brown v. Allstate Ins. Co.*, 344 S.C. 21, 25, 542 S.E.2d 723, 725 (2001) (reinstating a trial court's decision though the trial court had erred since the error was harmless); 5 Am.Jur.2d *Appellate Review* § 711 (1995) ("Harmless error provisions are designed to eliminate reversals on purely formal and technical grounds, and to assure that substantial justice has been done.").

Based on the foregoing, the trial court's order is

**AFFIRMED.**

GOOLSBY and HUFF, JJ., concur.