23309

Frances Fulmer RHODES, Respondent v. PALMETTO PATHWAY HOMES, INC., Appellant.

(400 S.E. (2d) 484)

Supreme Court

---

*Dennis J. Christensen, Wise & Cole, P.A.*, and *Robertson H. Wendt, Jr., Hollings and Nettles*, Charleston, *for appellant*.

*E. Lloyd Wilcox*, Charleston, *for respondent*.

Heard Oct. 23, 1990.

Decided Jan. 21, 1991.

FINNEY, Justice:

Appellant Palmetto Pathway Homes, Inc., appeals from a circuit court order permanently enjoining it from establishing a group residence for mentally impaired adults on property owned by the appellant and located in a subdivision subject to restrictive covenants. We reverse.

Respondent Frances Fulmer Rhodes owns property in the subdivision where appellant, a nonprofit corporation, intended to operate the group residence. Respondent instituted this action for a permanent injunction, alleging that appellant's use of the property as a home for unrelated mentally impaired

adults was prohibited by the restrictive covenants. The pertinent portion of the restrictive covenants states:

> E. The property hereby conveyed shall not be used otherwise than for private residence purposes, nor shall more than one residence, with the necessary outbuildings be erected on any one lot, nor shall any apartment house or tenement house be erected thereon; nor shall any one lot be subdivided or its boundary lines changed from the location as shown on said map without in any one of the cases above enumerated the written consent of the grantor endorsed on the deed of conveyance thereof.

The trial court determined that a group residence would violate the restrictive covenants and granted a permanent injunction against the appellant. In his order enjoining establishment of the home, the trial judge stated: "This court cannot override restrictive covenants unless it finds that the restrictive covenants are in violation of our State or General Law." In its findings, the trial court noted: "The defendant is about to engage in a business or commercial enterprise" based upon the fact that the appellant would receive income as a result of housing the residents, pay employees, pay withholding taxes, keep records and prepare profit and loss statements. The trial judge held that "the group housing as described by the Defendant does not meet the definition of a single family house as intended by the restrictive covenants ..."

First, appellant maintains that the number of handicapped individuals occupying the premises will at no time exceed nine, that the dwelling will be used solely as a residence and no training or treatment will be conducted at the home, and that routine household chores will be performed by the residents with the assistance and round-the-clock supervision of counselors. Second, appellant argues that the functions characterized by the trial court as business activity are incidental to the operation and maintenance of the residence as a home. Finally, appellant contends the right of handicapped individuals to reside in a community setting is protected by public policy and state and federal law, notwithstanding restrictive covenants. We agree.

> Courts tend to strictly interpret restrictive covenants and resolve any doubt or ambiguities in a covenant on the presumption of free and unrestricted land use. *Ed-*

*wards v. Surratt*, 228 S.C. 512, 90 S.E. (2d) 906 (1956). The historical disfavor of restrictive covenants by the law emanates from the widely held view that society's best interests are advanced by encouraging the free and unrestricted use of land. *See Hamilton v. CCM, Inc.*, 274 S.C. 152, 263 S.E. (2d) 378 (1980). Thus, to enforce a restrictive covenant, a party must show that the restriction applies to the property either by the covenant's express language or by a plain unmistakable implication. *Hamilton v. CCM, Inc., supra*.

This Court finds persuasive the reasoning of other jurisdictions which have held that the incident necessities of operating a group home such as maintaining records, filing accounting reports, managing, supervising, and providing care for individuals in exchange for monetary compensation are collateral to the prime purpose and function of a family housekeeping unit. Hence, these activities do not, in and of themselves, change the character of a residence from private to commercial. *Gregory v. State Department of Mental Health Retardation and Hospitals*, 495 A. (2d) 997 (R.I. 1985); *J.T. Hobby & Son, Inc. v. Family Homes*, 302 N.C. 64, 274 S.E. (2d) 174, 180 (1981).

We conclude that interpretation of the restrictive covenants in such a way as to prohibit location of a group residence for mentally impaired adults in a community is contrary to public policy as enunciated by both state and federal legislation. *See Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 363 S.E. (2d) 891 (1987) [Restrictive covenants will not be interpreted or given effect if their application would be contrary to public policy]; *Craig v. Bossenbery*, 134 Mich. App. 543, 351 N.W. (2d) 596 (1984).

Concern for the mentally handicapped has been embodied in the public policy of South Carolina for many years. The Bill of Rights for Handicapped Persons, as set forth in S.C. Code Ann. § 43-33-510 et seq. (1976), demonstrates a commitment to the handicapped. S.C. Code Ann. § 6-7-830 (Supp. 1989), which exempts homes for the mentally handicapped from local zoning ordinances, expresses in broad terms the State's public policy that handicapped persons shall not suffer housing discrimination on account of thir handicap.

The Fair Housing Amendments Act of 1988 articulates the public policy of the United States as being to encourage and

support handicapped persons' right to live in a group home in the community of their choice. 42 U.S.C. §§ 3602-3608 (Supp. 1990). "This provision is intended to prohibit special restrictive covenants . . . which have the effect of excluding . . . congregate living arrangements for persons with handicaps." H.R. Rep. No. 100-711, 100th Cong. (2d) Session, 23 (1988), U.S. Code Cong. & Admin. News 1988, pp. 2173, 2184. Since the need for treatment and maintenance of the mentally handicapped is a legitimate and strong public interest as recognized by state and federal legislation, a refusal to enforce restrictive covenants against otherwise unobtrusive group homes substantially advances that interest by promoting integration of the mentally handicapped into all neighborhoods of the community. *Westwood Homeowners Association v. Tenhoff*, 155 Ariz. 229, 745 P. (2d) 976 (Ariz. App. 1987).

The Michigan Appellate Court made a persuasive statement on public policy regarding handicapped individuals in *Craig v. Bossenbery, supra,* declaring:

> The strong public policy supporting group homes overcomes the public policy which favors the right of property owners to create restrictive covenants. We cannot consider the property owners' apparent motive in drafting or retaining a covenant unless we encourage indirect methods to exclude the handicapped where blatant, direct methods would clearly fail.

351 N.W. (2d) at 601.

We conclude that the location and operation of a group residence for mentally retarded adults in the manner and under the conditions proposed by the appellant would not significantly alter the character of the residential community in which it is situated and would not infringe upon the plain and obvious purpose of the restrictive covenants. Furthermore, this Court finds that enforcement of this restrictive covenant would have the effect of depriving the mentally impaired of rights guaranteed under the Fair Housing Amendments Act. For the foregoing reasons, the ruling of the circuit court is reversed and the injunction is vacated.

Reversed and vacated.

GREGORY, C.J., and HARWELL, CHANDLER and TOAL, JJ., concur.