2337

Jean H. HARRINGTON and Fred L. Love, Respondents v. Devoe BLACK-STON and Homeowners' Association of Leeward Landing, Inc., Defendants, of whom Devoe Blackston is, Appellant, and Homeowners' Association of Leeward Landing, Inc., is, Respondent.

(459 S.E. (2d) 309)

Court of Appeals

4

4

*Larry C. Brandt* of Walhalla and *Michael J. Smith,* Seneca, *for appellant.*

*Samuel F. Albergotti,* Anderson, *for respondent.*

*Jean H. Harrington,* Anderson and *Fred L. Love,* Central, both *pro se.*

Heard Feb. 9, 1995; Filed Apr. 17, 1995.

Refiled June 2, 1995; Reh. Den. Aug. 3, 1995.

### ORDER TO WITHDRAW ORIGINAL OPINION AND TO SUBSTITUTE OPINION AND TO DENY PETITION FOR REHEARING

*Per Curiam:*

The previous Opinion in the above-referenced case, filed April 17, 1995, is hereby withdrawn and the Amended Opinion is substituted and attached hereto. Except to the extent this substituted opinion may grant relief sought in the Petition for Rehearing, the Petition for Rehearing is otherwise denied as we have been unable to discover any other material fact or principle of law that was overlooked, misconstrued or disregarded.

IT IS SO ORDERED.

/s/ Jasper M. Cureton, J.
For the Court

CURETON, Judge:

In this declaratory judgment action, Devoe Blackston appeals the trial court's finding that a 30.93-acre tract of land is subject to the Horizontal Property Act and the restrictions in the Master Deed. The facts of this case are set out in our opinion, *Harrington v. Blackston,* 311 S.C. 459, 429 S.E. (2d) 826 (Ct. App. 1993), which ordered a remand of the case for further consideration.

The order on remand required the trial court to determine the validity of the Master Deed, the manner in which the Master Deed and associated documents restrict the 30.93

acres not encompassed in Phase One,[1] and whether Blackston is entitled to a reformation of his foreclosure deed to free it from all restrictions and covenants of the Master Deed. The trial court held the Master Deed and allied documents were unambiguous and had clearly submitted the entire 30.93-acre tract to the condominium regime. He further concluded the tract was a common element to the 12.82 acres comprising Phase One.

When a controversy regarding the rights of condominium unit owners arises, the court must examine all relevant provisions of the Horizontal Property Act, master deed and allied documents. *Carney v. Donley*, 261 Ill. App. (3d) 1002, 199 Ill. Dec. 219, 633 N.E. (2d) 1015 (1994). These sources of rights and obligations of the condominium owners must be read together, in relation to each other and harmonized, if possible. *Mountain View Condominiums Homeowners Ass'n, Inc. v. Scott*, 180 Ariz. 216, 883 P. (2d) 453 (1994); *see also Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E. (2d) 46 (1984) (regime's authority must be gleaned from Act and master deed).

I. Application of the Horizontal Property Act

Blackston argues that because the Master Deed did not meet the requirements of the Horizontal Property Act as to the 30.93 acres not encompassed in Phase One, that land is not part of the regime. We reluctantly agree.

In South Carolina, an owner of the fee or leasehold interest in real estate may declare it to be subject to a condominium form of ownership by recording a master deed and other required documents with the proper public authorities. S.C. Code Ann. § 27-31-30 (Rev. 1991). Upon the proper recordation of these documents, the declarant's interest in the property subject to the declaration is subdivided both horizontally and vertically. 15A Am. Jur. (2d) *Condominiums* § 14 (1976). Thus, individual subdivided apartments and appurtenant common elements may be individually con-

---

[1] We reiterate the finding of our previous opinion that the 12.82 acres comprising Phase One are a regime pursuant to the Horizontal Property Act. We note that the Master Deed and Exhibit D to the deed set out the percentage ownership of each owner of a condominium unit in Phase One to the common elements in that Phase.

veyed and encumbered. S.C. Code Ann. § 37-31-40 (Rev. 1991); *see also Resolution Trust Corp. v. Eagle Lake and Golf Condominiums*, 310 S.C. 473, 427 S.E. (2d) 646 (1993) (individual units, as opposed to the whole condominium, may be mortgaged as any other separately owned property). After establishment of the regime, the newly created individual apartments and appurtenant common and limited elements continue to be owned by the declarant until such time as he conveys his interest in the apartments.[2] *See* 31 C.J.S. *Estates* § 148 (Supp. 1994). In other words, those claiming an interest in regime property must acquire it through the declarant or his successors in interest. *Id.*

Because a condominium is a creature of statute, 4 S.C. Juris. *Condominiums* § 5 (1991); *Clampit v. Cambridge Phase II Corp.*, 884 S.W. (2d) 340 (Mo. App. E.D. 1994); *Suntide Condominium Ass'n, Inc. v. Div. of Florida Land Sales and Condominiums*, 463 So. (2d) 314 (Fla. App. 1 Dist. 1984), strict compliance with the Horizontal Property Act is required to create a horizontal property regime. *Battery Homeowners Ass'n v. Lincoln Fin. Resources, Inc.*, 309 S.C. 247, 422 S.E. (2d) 93 (1992); *Prestwick Landowner's Ass'n v. Underhill*, 69 Ohio App. (2d) 45, 429 N.E. (2d) 1191 (1980) (declaring certain real estate to be a condominium does not make it so, especially where building plans as required by statute were not filed); *Hall Manor Owner's Ass'n v. City of West Haven*, 212 Conn. 147, 561 A. (2d) 1373 (1989) (development was not a condominium where its name did not include the word "condominium" and declaration contained legal description of land, but did not refer to survey of land as required by statute); *see also* 15A Am. Jur. (2d). *Condominiums* § 12 (1976). In *Battery*, homeowners bought their property subject to a Declaration of Covenants, Conditions and Restrictions. The Master Deed did not contain the words "Horizontal Property Regime" as required by the Horizontal Property Act. Our Supreme Court held the Act had not been complied with and a regime had not been created.

---

[2] The trial court held that once the Master Deed was recorded, the fee became "submerged in the regime." To the extent this implies the regime is a legal entity that holds title to regime property, this is an erroneous interpretation of condominium law.

As stated in S.C. Code Ann. § 27-31-30, a prerequisite to the establishment of a regime is the recording of a master deed "which shall set forth the particulars enumerated in S.C. Code Ann. § 27-31-100." Section 27-31-100(g) (Rev. 1991) requires that, in the event the developer proposes to develop the property in phases, the master deed shall contain certain additional information, to include, the maximum number of units in each future phase, the date the developer will elect whether he will proceed with each phase, and a general description of future common elements to be annexed to the property described in the master deed. Section 27-31-110 (Rev. 1991) requires that a lot plan and building plans showing improvements and common elements be attached to the master deed.

The Master Deed and allied documents in the case sub judice do not comply with these provisions as to the 30.93 acres in question. The question then presented is the effect of the failure to comply with the statute. Contrary to Blackston's argument, the Homeowner's Association asserts that because the description in the Master Deed refers to a boundary survey of the entire 43.75-acre tract, the whole tract has been submitted to a condominium form of ownership and the 30.93 acres have become common elements to Phase One under condominium law and the definition of common elements found in Appendix One to the Master Deed.

The rules applicable to the construction of contracts are applicable to the construction of covenants in deeds. 17 S.C. Juris. *Covenants* § 69 (1993). However, covenants that restrict the free use of property must be strictly construed against limitations upon the property's free use. *Hyer v. McRee*, 306 S.C. 210, 410 S.E. (2d) 604 (Ct. App. 1991). Where there is doubt, the doubt must be resolved in favor of the property's free use. *Id.* As voluntary contracts, however, restrictive covenants will be enforced according to their terms unless they are indefinite or contravene public policy. 17 S.C. Juris. *Covenants* § 100 (1993) (citing *Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 363 S.E. (2d) 891 (1987)).

We have reviewed the Master Deed and allied documents and find a serious indefiniteness as to what portion of the 43.75-acre tract the developer intended to submit to the

regime. In Section II of the Master Deed, while the property subject to the regime is described as that contained in Exhibit A,[3] the document also states "[b]y appropriate amendment the property subject to this declaration may be expanded by constructing 214 additional residences[4] and common elements thereon." Section IV(A) is captioned *The Present Condominium (Phase One)*. Section IV(A)(2) states "the common areas and limited common areas and facilities of the condominium include . . ." a number of improvements, to wit, the swimming pool, tennis courts, etc., and "(e) the other common areas shown on Phase One Site Plan and subsequent plans and future such buildings being so indicated in amendments to this Declaration." Further, it provides " 'common area' is also defined in Appendix One which is attached hereto and incorporated by reference herein." Section IV(B) is captioned *Developer's Permitted Additions to the Condominium.* Section IV(B) states that the property includes not only the 64 units in Phase One and its common areas, but shall also include five additional phases and their common areas, the plans of which "are set forth in Appendix Two, attached hereto. . . ." Appendix Two refers to requirements for insurance coverage, but is not otherwise helpful in this inquiry. Section V entitled *Plot Plan, Floor Plans, and Amendments Thereto* refers only to Phase One.

It is apparent from a reading of the Master Deed, its allied documents and the construction loan agreement that the developer intended to develop the 43.75-acre tract in six phases. To accomplish this, the developer was required to comply with all pertinent provisions of § 27-31-100. Unquestionably, the Master Deed fails to comply with several requirements of § 27-31-100 as relates to the 30.93 acres. Only the 12.83-acre

---

[3] Exhibit A refers to a boundary survey of the 43.75-acre tract.

[4] The plan of development called for 64 units to be constructed in Phase One and 214 units to be built in Phases Two through Six for a total of 278 units. Moreover, Section IV(B) captioned, *Developer's Permitted Additions to the Condominiums*, states the "property includes not only the 64 units in Phase One, but also 32 units in Phase Two, 42 units in Phase Three and 60 units in Phase Four." It also states "the plans for the development of Phases Two, Three, Four, Five and Six with options as to number of bedrooms are set forth in Appendix Two, attached hereto." Appendix Two, however, contains no plan of development. Additionally, as best we can tell from the record, the developer did not reserve the right to amend the master deed to add Phases Two through Six.

tract complies with § 27-31-100(b) and (c). Additionally, in order for the 30.93 acres to constitute future phases of the condominium, the master deed was also required by § 27-31-100(g) to "contain a general description of the plan of development" of the acreage, to include:

(1) The maximum number of units in each proposed stage of development;

(2) The dates by which the owner submitting such property to condominium ownership will elect whether or not he will proceed with each stage of development;

(3) A general description of the nature and proposed use of any additional common elements which the owner . . . proposes to annex to the property described in the master deed. . . .

(4) A chart showing the percentage interest in the common elements of each original unit owner at each stage of development if the owner submitting property to condominium ownership elected to proceed with all stages of development.

Additionally, while the homeowners argue § 27-31-110 ▮▮▮▮ did not have to be complied with at the time of the filing of the master deed as to future phases, we hold otherwise. Section 27-31-110 requires a plot plan be attached to the master deed showing "the proposed construction . . . of the building and other improvements. . . . Other common elements . . . must be shown graphically insofar as possible and must be described in detail in words and figures." Section 27-31-60(b) (Rev. 1991) gives an apartment owner the "right to require specific performance of any proposed common elements for recreational purposes set out in the master deed which are included in the next stage of the development that applies to recreational facilities in the event the additional stages of erection do not develop." As a practical matter, specific performance would not be available unless § 27-31-110 is substantially complied with. Apartment owners could assert no expectation as to common recreational elements in subsequent phases if those elements are neither described nor located on the land constituting those phases. We conclude the statute requires the filing of plot plans with the master deed even as to future stages of development where the developer

seeks to develop the property as a single regime but in "two or more stages." We are quick to note, however, that the statute also permits a developer to reserve the right to amend the master deed to implement subsequent stages of development. It therefore allows that if such right is adequately reserved, we see no reason why the developer could not, at the time he amends the master deed, comply with § 27-31-110 as to the additional phases.

Clearly, the statute has not been complied with in setting forth the plan of development of the 30.93-acre tract as a part of future stages of development of the condominium of in designating the tract itself as a common element of Phase One. *See* 4 S.C. Juris. *Condominiums* § 12 (1991) (plot plan must show location of each apartment and all common elements). Additionally, except for the statement in Appendix One, Para. I, all other references to common elements appear to refer to those under construction in Phase One or to such other areas as may later be submitted to the regime by proper amendment of the Master Deed.[5] Because these documents establishing the regime are fatally defective as to the 30.93-acre tract, a strict interpretation of the Horizontal Property Act mandates we hold the tract is not a part of the regime and that the regime consists only of the 12.82-acre tract in Phase One. *See Battery, supra.*

We recognize there is some appeal to the homeowners' argument that they bought their condominium units with the expectation that the condominium project would contain 278 units instead of the 64 units contained in Phase One. On the other hand, it seems to us incongruous to declare the 30.93 acres common elements if it is evident that was not the intention of the developer at the time the regime was established. We recognize the trial court made a sincere effort to accommodate all parties by declaring the 30.93 acres common elements, yet still affording Blackston development rights in the common elements. We nevertheless hold because the developer did not comply with the provisions of the Horizontal

[5] While the provision of the Master Deed regarding amendments is not in the record on appeal, we gather from the three recorded amendments to the Master Deed, that a majority of the homeowners must sign any amendment that materially affect the rights of any [homeowner], along with all affected mortgage holders.

Property Act as to the 30.93-acre tract, we are not at liberty to declare it a part of the regime. Contrary to the position of the homeowners, the mere filing of a boundary plat[6] containing the land in Phase One and what was to be five additional phases is insufficient to create a regime as to the property outside of Phase One. *See* 15A Am. Jur. (2d) *Condominiums* § 15 (1976) (In a condominium project, unlike a normal subdivision, the recording of a final tract map does not automatically convert the single parcel of land into as many separate condominium units as appear on the map).

## II. Master Deed Restrictions

Blackston further argues that the failure of the Master Deed and allied documents to meet the statutory requirements of the Horizontal Property Act invalidates all restrictions contained in the Master Deed as to the 30.93 acres. We disagree. The Master Deed contains a severability clause which states "[t]he invalidity of any . . . provision of the condominium documents shall not affect the validity of the remaining portions." Furthermore, as stated in our previous opinion, a purchaser at a judicial sale who receives a deed embodying covenants and restrictions takes his title subject to such covenants and restrictions. *Harrington,* 429 S.E. (2d) at 830.

Blackston purchased the property at a foreclosure sale. The master's order granting foreclosure states the purchaser[s] shall take fee simple title subject to the provisions of the Master Deed. The Master Deed states the property subject to the deed includes the land described in Exhibit A which is "[a]ll that . . . land containing 43.75 acres," less certain lots previously sold by the regime. Thus, Blackston owns the 30.93 acres in fee simple subject to any valid use restrictions contained in the Master Deed. Section VI of the Master Deed restricts the 30.93 acres to use for single-family residences. The severability clause has the effect of preserving the validity of this use restriction. We, therefore, hold Blackston may develop the property only for single-family residential purposes.

---

[6] The boundary plat was not made part of the record on appeal.

III. *Reformation of the Foreclosure Deed*

Blackston asserts the foreclosure deed should be reformed to excuse him from being subjected to any of the restrictions of the Master Deed. We disagree. Reformation requires clear and convincing proof of a mutual mistake between the parties to the instrument. *Timms v. Timms*, 290 S.C. 133, 348 S.E. (2d) 386 (Ct. App. 1986). A mutual mistake is one whereby both parties intended a certain thing but because of a mistake in drafting, did not get what they intended. *Id.* The evidence justifying reformation of a deed must be clear, satisfactory and convincing. *Gowdy v. Kelley*, 185 S.C. 415, 194 S.E. 156 (1938). Our review of the record fails to disclose evidence of a mistake as to the intended use of the property for single-family residences.[7] Thus, we affirm that portion of the trial court's order that refuses reformation of the foreclosure deed to exclude all restrictions.

Accordingly, for the foregoing reasons, the appealed order is

Affirmed in part and reversed in part.

HOWELL, C.J., and CONNOR, J., concur.

---

[7] We recognize there is authority for the proposition that if the Master Deed and other recorded documents do not conform to statutory requirements, equity may reform these documents to comply with the requirements of the law on the theory of a mutual mistake. *See* 15A Am. Jur. (2d) *Condominiums* § 15; 31 C.J.S. *Estates* § 148. However, here Blackston is not asking the court to validate the regime as to the 30.93 acres, but instead to vitiate it.