651 S.E.2d 617

**PENNY CREEK ASSOCIATES, LLC, Appellant,**

v.

**FENWICK TARRAGON APARTMENTS, LLC and Trademark Properties, Inc., Respondents.**

No. 4293.

Court of Appeals of South Carolina.

Submitted May 9, 2007.

Decided Sept. 18, 2007.

George Hamlin O'Kelley, III, of Mt. Pleasant, for Appellant.

Steven P. Groves, Sr., Neil C. Robinson; and Jeffrey S. Tibbals, all of Charleston, for Respondents.

BEATTY, J.

In this declaratory judgment action to determine the parties' rights under a declaration of covenants and restrictions, Penny Creek Associates appeals the master-in-equity's order granting summary judgment to Fenwick Tarragon Apartments· and Trademark Properties (collectively, "Fenwick Tarragon"). Penny Creek argues the master erred in deter-

mining Fenwick Tarragon's conversion of apartments into condominiums did not require Penny Creek's prior approval pursuant to the covenants and restrictions. We affirm.[1]

## FACTS

The underlying facts are not disputed. Penny Creek owned and developed property for residential use in Charleston County known as Fenwick Hall Plantation. On December 11, 2001, Fenwick Tarragon purchased 15.63 acres within Fenwick Hall Plantation for the purpose of constructing an apartment complex, known as the Vintage at Fenwick Plantation. The property was subject to the declaration of covenants and restrictions, which provided that the property was to be used exclusively for: single-family residential purposes; town-homes; apartment homes; commercial activities; and such other activities as may be approved by Penny Creek. Another section of the covenants and restrictions provided as follows:

*Section 3.02 Subdivision, Re–Platting, and Lot Specifications*

(a) No Lot or Parcel shall be subdivided or its boundary lines changed, nor shall application for same be made to the City of Charleston, except with [Penny Creek's] prior, written consent, which such consent may be granted or withheld in the sole discretion of [Penny Creek], its successors and assigns. However, [Penny Creek] hereby expressly reserves for itself, its successors and assigns, the right to replat any of the Property if [Penny Creek] determines, in its sole discretion, that the reconfiguration, alteration, or other adjustment of Property lines and boundaries would improve or enhance the value and/or aesthetic appearance of Fenwick Hall Plantation or any part thereof. Provided, however, that upon the execution of a contract of sale between [Penny Creek] and a proposed purchaser of any Lot or Parcel, [Penny Creek] shall no longer have the right to replat or otherwise alter the property lines of such Lot

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

or Parcel under contract, unless such proposed purchaser defaults under the terms of the contract.

(b) Any Lot or Parcel may, with [Penny Creek's] written approval, be combined to create a larger Lot or Parcel, and in such instance, [Penny Creek] may alter, without limitation, the specifications and guidelines affecting the Lot or Parcel.

In 2005, Fenwick Tarragon decided to convert the apartments into condominiums, and it took steps towards upgrading, financing, and marketing the project. Penny Creek learned of the project and demanded that Fenwick Tarragon first obtain Penny Creek's written consent for the conversion pursuant to the covenants and restrictions.[2] Fenwick Tarragon believed that it did not need permission, and it proceeded with the project.

On July 14, 2005, Penny Creek brought a declaratory judgment action against Fenwick Tarragon requesting the circuit court declare that the conversion of the apartments into condominiums amounted to a subdivision of the property without Penny Creek's permission and was in violation of the covenants and restrictions. Penny Creek also sought both a temporary and permanent injunction on any further violations of the covenants and restrictions. Fenwick Tarragon also filed a declaratory judgment action, seeking a declaration that it had not violated the covenants and restrictions, which was later dismissed by consent of the parties. On July 21, 2005, Penny Creek filed another motion for an injunction, specifically requesting that the court prohibit Fenwick Tarragon from continuing with the condominium project. Fenwick Tarragon filed its answer and counterclaim, denying that it had violated the covenants and restrictions, asserting that the conversion from apartments to condominiums did not amount to the subdivision or the alteration of the boundary lines, and requesting a declaration to that effect. Penny Creek's motion for a temporary injunction was denied.

---

2. Fenwick Tarragon alleges in its brief that it actually sought permission from Penny Creek, despite the belief that no permission was necessary, but Penny Creek demanded $1,300,000 before it would grant permission. Although an affidavit in the record indicates that Penny Creek requested "substantial sums" before consenting to the conversion, nothing in the record indicates the actual amount of the demand.

Fenwick Tarragon filed a motion for summary judgment, which was denied by the circuit court. Fenwick Tarragon moved to expedite the hearing of the matter, and the parties consented to the case being transferred to the master. Both parties made new motions for summary judgment, and the case was heard before the master on June 22, 2006. After the hearing, the master granted summary judgment to Fenwick Tarragon, finding its actions did not violate the covenants and restrictions and did not amount to a subdivision of the property. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and it is clear the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. However, summary judgment is not appropriate where there is no dispute as to the facts but the parties dispute the inferences to be drawn from those facts. *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997). "In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party." *Osborne ex rel. Osborne v. Adams*, 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

## LAW/ANALYSIS

■ Penny Creek argues the master erred in determining the conversion of the apartments into condominiums did not require Penny Creek's prior consent. Penny Creek asserts: the stipulated language of the covenants required prior consent in order to subdivide the property; the creation of a condominium is a subdivision of the property; and the master erred in finding otherwise. We disagree.

■ Restrictive covenants are contractual in nature, and thus, the language used in the restrictive covenant is to be construed according to its plain and ordinary meaning. *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006). However, restrictions on the use of property are historically disfavored. *Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 270, 363 S.E.2d 891, 893 (1987). "Thus, to enforce a restric-

tive covenant, a party must show that the restriction applies to the property either by the covenant's express language or by a plain unmistakable implication." *Rhodes v. Palmetto Pathway Homes, Inc.,* 303 S.C. 308, 311, 400 S.E.2d 484, 485 (1991). "Restrictions on the use of property will be strictly construed with all doubts resolved in favor of free use of the property, although the rule of strict construction should not be used to defeat the plain and obvious purpose of the restrictive covenants." *Hardy,* 369 S.C. at 166, 631 S.E.2d at 542.

The master in the present case found that the relevant language of the covenants and restrictions was clear and unambiguous. Reviewing the language of the covenants and restrictions, the master found that the restriction on subdividing the property without obtaining the prior written consent of Penny Creek applied only to the subdivision of the land and did not apply to the division of the landowners' ownership interest in the property. The master further found that the covenants and restrictions did not specifically bar the use of a parcel for condominiums and changing apartments to condominiums did not amount to a change in use. Noting that Penny Creek did not specify in the restrictions that property could not be used for condominiums, the master found Fenwick Terragon did not need to seek permission prior to converting the apartments and ordered that the conversion could proceed.

We agree with the master. The plain language of section 3.02 of the covenants and restrictions indicates a clear intention to prevent any change of the size or boundary of the property or land itself when it required prior permission for the subdivision or alteration of the boundary lines of a lot or parcel. Within the same subsection that requires prior written permission before property lines can be altered, Penny Creek reserved for itself the right to replat property or change the boundary lines in a manner to improve the value and aesthetic appearance of Fenwick Hall Plantation. Section 3.02(a). Further, the next subsection also deals with altering boundary lines of property by providing that written permission is also required when attempting to combine lots or parcels to create one larger one. Section 3.02(b). This conclusion is further bolstered by the definitions of "lot" and

"parcel" contained within the covenants and restrictions.[3] Thus, a clear reading of the controlling section of the covenants and restrictions indicates that Penny Creek wished to control only a subdivision of land which would alter boundary lines in such a manner as would change the size of a building lot or parcel. Nothing in the section indicates Penny Creek was retaining the power to prevent conversion of an approved apartment complex into a condominium complex.[4]

However, Penny Creek argues that prior caselaw provides that the conversion of an apartment into a condominium amounts to a subdivision of property such that the restriction in the current case would prevent the conversion without prior written permission. Penny Creek first cites *Harrington v. Blackston*, 319 S.C. 1, 459 S.E.2d 309 (Ct.App.1995), *vacated by* 322 S.C. 470, 473 S.E.2d 47 (1996), for the proposition that converting a property to a condominium-style of ownership subdivides the property horizontally and vertically. In *Harrington*, this court noted that an owner of a fee or leasehold interest in property could declare it to be subject to a condominium form of ownership by following the requirements set out in the Horizontal Property Regime Act. This court noted

---

3. "Lot" is defined in the covenants and restrictions as "any lot, whether improved or unimproved, which may be independently owned and conveyed, which is shown on a recorded plat of the Property and designated for use as a building area or site for the construction of a single-family dwelling." "Parcel" is defined as "any property, whether improved or unimproved, which may be independently owned and conveyed, and which is shown on a recorded plat of the Property and designated for use as a building area site for the construction of apartment homes, townhomes, or commercial buildings."

4. Although the question of whether the conversion amounts to a change in the approved "use" is not before this court, the master noted that section 3.01 of the covenants and restrictions provided that property could be used for, among other uses, apartments. The master found that: there had been no change in use in the present case; and the words "apartment" and "condominium" were used interchangeably in the Horizontal Property Regime Act. *See Baker v. Town of Sullivan's Island*, 279 S.C. 581, 584, 310 S.E.2d 433, 435–36 (Ct.App.1983) (holding that town erred in denying approval of conversion of apartment building to condominium pursuant to a zoning ordinance because "the conversion from an apartment building to condominiums constitute[ed] a change of ownership, rather than a change in use"); S.C.Code Ann. § 27–31–20(c) (2007) (referring to condominiums as apartments).

that "[u]pon the proper recordation of these documents, the declarant's interest in the property subject to the declaration is subdivided both horizontally and vertically." *Harrington,* 319 S.C. at 5, 459 S.E.2d at 311 (citing 15A Am.Jur.2d *Condominiums* § 14 (1976)).

Ignoring the fact that this opinion has been vacated,[5] we agree with the master that this case holds that conversion to a condominium divides an *ownership interest* in the *property* but does not subdivide the land itself. In other words, while an owner of an apartment complex grants sole ownership of individual units to purchasers after converting the building to a condominium, the property and common areas remain intact and the owner merely grants a share of his ownership interest in these areas to purchasers. Thus, the owners of individual units share ownership of the property/common areas as tenants in common. The property itself is not subdivided or replatted, nor does the "footprint" of the property change. Accordingly, we find *Harrington* is completely consistent with prior caselaw that converting apartments into condominiums divides the ownership interest in the underlying property and does not amount to a subdivision of the underlying parcel or lot. *See Baker,* 279 S.C. at 584, 310 S.E.2d at 435 (finding "untenable" the argument that converting an apartment complex into a condominium would create twenty separate lots and noting that the "Horizontal Property Act provides that the ownership of the land upon which is built a condominium is held as co-tenants by the owners, but not subject to partition").

Penny Creek next argues that this court has previously found that conversion to a condominium amounted to a subdivision of property in *Houck v. Rivers,* 316 S.C. 414, 450 S.E.2d 106 (Ct.App.1994). In *Houck,* three separate buildings on one property—a large house, a kitchen house, and a carriage house—were converted into individual condominiums. In describing the conversion, this court stated: "In order to subdivide the property, the owners designated it a condominium regime, although each unit is entirely separate." *Houck,* 316

---

5. Penny Creek seems to argue that the *Harrington* opinion is good law because it was vacated due to a settlement between the parties and not reversed by the supreme court.

S.C. at 415, 450 S.E.2d at 108. However, the issue before the *Houck* court was whether an owner of one of the units was violating the covenants and restrictions by operating a bed and breakfast out of her home. *Id.* at 417, 450 S.E.2d at 109. It is clear to this court that the quoted language, while appearing to support Penny Creek's position, is only a recitation of the facts of the case and has no precedential value whatsoever. .

Finally, Penny Creek cites to *Hoffman v. Cohen*, 262 S.C. 71, 202 S.E.2d 363 (1974), to support its argument that a condominium conversion is a subdivision of property. In *Hoffman*, a landowner proposed to build a sixty-two unit high-rise condominium building on his property within a residential subdivision at the beach. The subdivision's covenants and restrictions provided that: residences could not extend beyond the boundary lines; the property could be used for residential uses only; and the lot could not be subdivided, or its boundary lines changed, without prior written consent of the grantor. *Id.* at 74, 202 S.E.2d at 365. The circuit court found that building a condominium complex would be a permissible use within the subdivision. The *Hoffman* court reversed, finding the covenants ambiguous and construing the overall scheme of the neighborhood as permitting only single-family residences. *Id.* at 77–78, 202 S.E.2d at 366. The court noted that it was not deciding whether an apartment building would be permitted under the restrictions, and it further noted that a condominium complex would essentially be "a commercial-type operation, inconsistent, we think, with the whole tenor of restrictions." *Id.* at 76, 202 S.E.2d at 366.

We find Penny Creek's reliance upon *Hoffman* is misplaced. Although the covenants and restrictions in *Hoffman* were similar to the ones in the present case, the court did not rule on the question of subdividing property, the *Hoffman* restrictions did not specify that multi-family residences could be built, and the *Hoffman* court had to look outside the language of the ambiguous restrictions to determine that the overall scheme of the neighborhood was for single-family residences. The present case is distinguishable in that the parties stipulate the language of the restrictions is not ambiguous, the cove-

nants and restrictions specify that a multi-family apartment complex may be built, and thus, the overall "tenor" of the restrictions does not bar a multi-family residence, be it an apartment complex or a condominium complex.[6]

In conclusion, we find the conversion of an apartment building to condominiums amounts to the division of the *ownership interest* in the underlying property/common areas; it does not amount to the subdivision of the underlying land, parcel, or lot. Reading the covenants and restrictions as a whole in the present case, we find the requirement for permission prior to subdividing a "lot or parcel" applied only to the *land* and did not apply to conversion of an apartment complex into condominiums. Our caselaw does not hold that condominium conversion amounts to subdividing the underlying property. Because the conversion did not amount to a subdivision under the covenants and restrictions or under our caselaw, we find Fenwick Tarragon did not need to seek permission from Penny Creek prior to conversion.

Accordingly, the master-in-equity's order granting summary judgment is

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.

---

**6.** We find untenable Penny Creek's argument that the condominium complex would violate the "whole tenor of restrictions" and be out of character for the neighborhood in light of the fact that Penny Creek approved the original apartment building plans and later approved the building of a separate condominium complex within the same subdivision.