**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Deborah L. Boies, Respondent,

v.

Jacqueline J. Lanier, Appellant.

Appellate Case No. 2017-002557

———————

Appeal From Greenville County
Charles B. Simmons, Jr., Master-in-Equity

———————

Unpublished Opinion No. 2020-UP-242
Submitted June 1, 2020 – Filed August 12, 2020

———————

**AFFIRMED**

———————

Matthew Holmes Henrikson, of Henrikson Law Firm, LLC, of Greenville, for Appellant.

James G. Carpenter, of Carpenter Law Firm, PC, of Greenville, for Respondent.

———————

**PER CURIAM:** In this action to enforce real covenants, Jacqueline J. Lanier challenges the order of the master-in-equity finding in favor of Deborah L. Boies. Lanier argues the master erred in: 1) finding the language in provision 1.4 of the covenants was unambiguous as it related to the fencing that could be placed on Lanier's property; 2) failing to find that provision 2.8 was unenforceable because it

was too broad, did not specify color, and violated public policy; 3) ordering Lanier to replace the fencing she removed in light of Boies's testimony and email to Lanier and other equitable considerations; and 4) finding the supplemental covenants and restrictions filed only in Lanier's title chain and not the chains of other grantees were binding on the other grantees. We affirm.

## FACTS

In 1987, Boies purchased a 122-acre parcel near Landrum in an area commonly referred to as "horse country." Over the years, Boies and her husband installed two miles of fencing around the perimeter of the property, which encompassed several paddocks and pastures. The fences were constructed out of white vinyl and fashioned in the style of horse fencing, with three cross-boards between each post.

At some point, Boies decided to subdivide the property and sell individual parcels. In preparing to sell the property, Boies drafted and recorded a set of covenants. Thereafter, Boies updated the covenants but did not record the updated covenants. However, Boies indicated that she provided the updated covenants to purchasers at their closings.

The first set of covenants included provision 1.4, which provided, in pertinent part:

> Walls, Fences and Hedges. Any fence placed on any tract or parcel shall be comparable in style and constructed material to a fence presently located on the boundary of the Real Property (white vinyl fencing).

The updated covenants included provision 1.4 and provision 2.8.[1] Provision 2.8 provided:

> Grantor Approval of Plans. No landscaping, building, fence, wall or other structure shall be commenced, erected, maintained, and all subsequent reconstruction, modifications, additions or alterations upon any Lot, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of

---

[1] Provision 2.8 was not included in the original set of recorded covenants.

the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Grantor.

The Grantor shall have the right to refuse to approve any such building plans, specifications, site plans, landscaping, or grading plans [that] are not suitable or desirable, in the Grantor's sole opinion, for any reason, including purely aesthetic reasons.

In 2015 and 2016, Lanier, a real estate attorney, purchased two parcels from Boies that were located next door to Boies's house and surrounded by white, vinyl fencing. The updated set of covenants was attached to and recorded with both of Lanier's deeds. In November or December of 2016, Lanier decided to replace the white, vinyl fence on her property with a dark, wooden fence. Lanier began removing the white, vinyl fencing but did not submit a written modification request to Boies and did not receive written approval to remove the fence.

Boies was out of town when Lanier began removing the fence. After learning of the removal, Boies telephoned Lanier to discuss the issue. According to Lanier, Boies told her, "I don't know why you are taking that fence down. I guess you can since it's your property, but I don't understand why you're doing it." Lanier proceeded to remove the fence boards but not the fence posts. On November 28, 2016, Boies emailed Lanier the following:

It has been brought to my attention that you are removing the white vinyl fencing on the property you purchased from us. According to the covenants you are only permitted to re-install 'like' fencing[,] which means white vinyl.

At this point I have no idea why you are removing it but felt it important to let you know that any replacement must be the same.

On November 30, 2016, Boies filed a summons and complaint seeking to enforce provisions 1.4 and 2.8 against Lanier. Additionally, Boies filed a motion for a temporary restraining order and preliminary injunction, seeking to prevent Lanier from removing the fence posts. However, while Boies was attempting to obtain a hearing on the motion, Lanier removed the fence posts. Thereafter, the parties

entered into a consent order on December 20, 2016, in which Boies agreed to withdraw her motion and Lanier agreed not to erect a new fence until final disposition of the action. Lanier then filed her answer on January 13, 2017. On May 1, 2017, the action was referred by consent to the master-in-equity.

The master heard the action on October 4, 2017, and entered an order in favor of Boies on October 19, 2017. In his order, the master found: 1) the covenants attached to Lanier's deed were a part of the deed and constituted the covenants and restrictions applicable to the real estate; 2) dark, wooden fencing would violate provision 1.4 because it was not "comparable in style and constructed material to a fence presently located at the boundary of the Real Property (white[,] vinyl fencing)."; 3) "[w]hile there was an issue as to whether the [updated covenants were] in the deeds of the other six[] purchasers of the other tracts or was given to them at closing, it is clear that the identical covenants apply to all landowners."; 4) the removal of the fence was a modification under provision 2.8, and Lanier failed to make a written modification request or obtain Boies's written consent; 5) the language of provision 2.8 was valid and enforceable pursuant to *Palmetto Dunes Resort v. Brown*[2]; and 6) under provision 2.8, Boies was entitled to exercise her aesthetic judgment and enforce the requirement of white vinyl fencing. Accordingly, the master ordered Lanier to "replace, within 90 days of this [o]rder being filed, the fencing that she removed with fencing that is 'comparable in style and constructed material to a fence presently located on the boundary of the Real Property (white vinyl fencing).'"

Lanier filed a motion for reconsideration on October 30, 2017, and the motion was denied on November 27, 2017. This appeal followed.

## ISSUES ON APPEAL

1. Did the master err in finding that the language in provision 1.4 was unambiguous as it related to fencing that could be placed on the property?

2. Did the master err in failing to find that provision 2.8 is unenforceable because it is too broad, fails to specify color of structures, and violates public policy by reserving in a single grantor the ability to approve or disapprove of any proposed changes for "any reason"?

---

[2] 287 S.C. 1, 336 S.E.2d 15 (Ct. App. 1985).

3. Did the master err in ordering Lanier to replace the fencing she removed in light of Boies's testimony and email to Lanier and the equitable considerations?

4. Did the master err in finding that the updated covenants were binding on Lanier's other grantees?

## STANDARD OF REVIEW

"An action seeking an injunction to enforce restrictive covenants sounds in equity." *Kinard v. Richardson*, 407 S.C. 247, 256, 754 S.E.2d 888, 893 (Ct. App. 2014). "On appeal of an equitable action tried by a [m]aster, [an appellate c]ourt can find facts in accordance with its own view of the evidence." *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001). "However, this court is not required to disregard the master's factual findings or ignore the fact that the master was in the better position to assess the credibility of the witnesses." *Kinard*, 407 S.C. at 256, 754 S.E.2d at 893.

The issuance of a mandatory injunction is reviewed under an abuse of discretion standard. *See Hunnicutt v. Rickenbacker*, 268 S.C. 511, 515–16, 234 S.E.2d 887, 889 (1977) (holding that the issuance of a mandatory injunction "rests in the sound judicial discretion of the court"); *see also Sea Pines Plantation Co. v. Wells*, 294 S.C. 266, 275, 363 S.E.2d 891, 896 (1987) (holding "the trial judge did not abuse his discretion in issuing the mandatory injunction").

## LAW/ANALYSIS

Lanier argues the master erred in finding that provisions 1.4 and 2.8 were valid and enforceable and requiring her to replace the fencing she removed. Boies argues the master's rulings are proper. We agree with Boies.

"Restrictive covenants, sometimes referred to as 'real covenants,' are agreements 'to do, or refrain from doing, certain things with respect to real property.'" *Kinard*, 407 S.C. at 257, 754 S.E.2d at 893 (quoting *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 361, 628 S.E.2d 902, 913 (Ct. App. 2006)). "Restrictive covenants are contractual in nature, and thus, the language used in the restrictive covenant is to be construed according to its plain and ordinary meaning." *Penny Creek Assocs., LLC v. Fenwick Tarragon Apartments, LLC*, 375 S.C. 267, 271, 651 S.E.2d 617, 620 (Ct. App. 2007). However, because restrictions on the use of property are historically disfavored in South Carolina, courts tend to strictly interpret restrictive covenants and resolve any

ambiguities in favor of the free use of the property. *See Sea Pines*, 294 S.C. at 270, 363 S.E.2d at 893 ("The historical disfavor of restrictive covenants by the law emanates from the widely held view that society's best interests are advanced by encouraging the free and unrestricted use of land."); *see also Penny Creek*, 375 S.C. at 272, 651 S.E.2d at 620 ("Restrictions on the use of property will be strictly construed with all doubts resolved in favor of free use of the property . . . ." (quoting *Hardy v. Aiken*, 369 S.C. 160, 166, 631 S.E.2d 539, 542 (2006))). Crucially, "[t]he rule of strict construction governing restrictive covenants does not preclude their enforcement." *Sea Pines*, 294 S.C. at 270, 363 S.E.2d at 894. Rather, "[a] restrictive covenant will be enforced if the covenant expresses the party's intent or purpose, and this rule will not be used to defeat the clear express language of the covenant." *Id*.

Provision 1.4

Lanier argues the circuit court erred in finding provision 1.4 was unambiguous regarding the type of fencing that could be placed on her property because it requires new fencing to be merely similar to white, vinyl fencing. Boies argues provision 1.4 unambiguously provides that only white, vinyl fencing may be erected on the property. We agree with Boies.

"Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution." *Kinard*, 407 S.C. at 257, 754 S.E.2d at 893 (quoting *Taylor v. Lindsey*, 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998)). "[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Id*. (quoting *Taylor*, 332 S.C. at 4, 498 S.E.2d at 863–64 (alteration in original)). "When 'the language imposing restrictions upon the use of property is unambiguous, the restrictions will be enforced according to their obvious meaning.'" *Id*. at 257, 754 S.E.2d at 894 (quoting *Shipyard Prop. Owners' Ass'n v. Mangiaracina*, 307 S.C. 299, 308, 414 S.E.2d 795, 801 (Ct. App. 1992)).

However, when the language is ambiguous, "[c]ourts tend to strictly interpret restrictive covenants and resolve any doubt or ambiguities in a covenant on the presumption of free and unrestricted land use." *Rhodes v. Palmetto Pathway Homes, Inc.*, 303 S.C. 308, 310, 400 S.E.2d 484, 485 (1991). A covenant "is ambiguous when the terms . . . are reasonably susceptible of more than one interpretation." *Town of McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302.

We find the master properly determined that provision 1.4 was unambiguous. Provision 1.4 provides, in pertinent part:

> Walls, Fences and Hedges. Any fence placed on any tract or parcel shall be comparable in style and constructed material to a fence presently located on the boundary of the Real Property (white vinyl fencing).

We find the parenthetical at the end of this clause identifies a white, vinyl fence as a fence "comparable in style and constructed material" to the existing fence.[3] Therefore, the use of the word "comparable" cannot be interpreted to allow for variations in the color and building materials of a new fence. Rather, we find the use of the word comparable allows for variations in the type of white, vinyl fencing so that a property owner is not required to obtain the exact white, vinyl fencing used by Boies.[4] Such variations may include the choice of manufacturer, vinyl boards with rounded or squared edges, hollow or solid vinyl boards, smooth or faux wood texture, and white, vinyl differing in quality from that installed by Boies. Thus, the plain intent of the covenant is to require white, vinyl fencing without requiring a property owner to go to extreme lengths to obtain the exact material used by Boies in the original fence. *See Kinard*, 407 S.C. at 257, 754 S.E.2d at 893 ("[T]he paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." (alteration in original) (quoting *Taylor*, 332 S.C. at 4, 498 S.E.2d at 863–64)). Accordingly, we do not agree with Lanier's contention that provision 1.4 is ambiguous, nor do we agree that provision 1.4 would allow a property owner to erect a fence of different color and material so long as the new fence is somewhat similar to the existing white, vinyl fencing. *See Town of McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302 (finding a covenant "is ambiguous when the terms . . . are reasonably susceptible of more than one interpretation").

We conclude that provision 1.4 unambiguously required that any new fence be constructed with white, vinyl material.

Provision 2.8

Lanier argues the master erred in finding that provision 2.8 is enforceable because it is too broad, fails to specify color of structures, and violates public policy by reserving in a single grantor the ability to approve or disapprove of any proposed changes for "any reason." Boies argues the master properly determined provision

---

[3] Boies similarly testified that she included the parenthetical as a definition.

[4] Consistent with this conclusion, Boies testified that provision 1.4 did not require a new fence to be exactly the same as the existing fence, but required that any new fence be constructed with white, vinyl material.

2.8 was unambiguous and created an enforceable standard based on judgment and taste. We agree with Boies.

"A covenant must express the purpose of the parties thereto to be valid and enforceable[,] and it must not be too indefinite or against public policy." *Vickery v. Powell*, 267 S.C. 23, 28, 225 S.E.2d 856, 858 (1976).

In *Palmetto Dunes*, this court found a covenant allowing a resort to disapprove of construction plans for purely aesthetic considerations was not ambiguous despite failing to establish absolute standards. 287 S.C. at 4–7, 336 S.E.2d at 17–19. On appeal, the appellant challenged the covenant as being vague and ambiguous because it allowed the resort to disapprove of construction plans for "purely aesthetic considerations." *Id*. at 4–5, 336 S.E.2d at 17–18. This court noted that in "[r]ejecting similar arguments, courts have upheld covenants that provide *no* criteria to guide the approving authority in deciding upon the suitability of proposed construction." *Id*. at 5, 336 S.E.2d at 18. The court went on to find that the aesthetic considerations clause was not indefinite because "[i]ts settled intent, viewed in relation to the entire document, is to vest in Palmetto Dunes the authority to disapprove plans based upon its judgment of their aesthetic suitability . . . ." *Id*. at 6, 336 S.E.2d at 18.[5] Furthermore, the court noted, "[t]he covenant, by making no attempt to set forth objective 'aesthetic considerations,' implicitly recognizes, as do we, that it is impossible to establish absolute standards to guide a judgment of taste." *Id*. at 6–7, 336 S.E.2d at 19. The court found the lack of an objective standard "does not compel the conclusion that the covenant is ambiguous[,]" and despite the fact that "people may reasonably differ as to whether a house is aesthetically appropriate, the covenant is unambiguous in leaving this solitary judgment to Palmetto Dunes." *Id*. at 7, 336 S.E.2d at 19.

Here, we find the master properly determined that provision 2.8 was valid and enforceable pursuant to the rationales set forth in *Palmetto Dunes*. Provision 2.8 states, in pertinent part:

> No [modifications] shall be commenced . . . upon any Lot . . . until the plans . . . have been submitted to and *approved in writing as to harmony of external design and*

---

[5] The court noted that a grantor vested with such aesthetic discretion by way of a covenant "is constrained only to exercise its judgment reasonably and in good faith." *Id*. at 7, 336 S.E.2d at 19.

*location in relation to surrounding structures and topography* by the Grantor.

The Grantor shall have the right to refuse to approve any such building plans . . . *[that] are not suitable or desirable*, in the Grantor's sole opinion, for any reason, *including purely aesthetic reasons*.

(emphases added). We find provision 2.8 was unambiguous because its settled intent, viewed in relation to the entire document, was to vest in Boies the authority to disapprove plans based upon her judgment of their aesthetic suitability. Furthermore, the lack of objective standards in the covenant does not render the covenant too broad or indefinite, as this court has recognized "that it is impossible to establish absolute standards to guide a judgment of taste." *Id*. at 6–7, 336 S.E.2d at 19.

Lanier contends that the following clause of provision 2.8 is violative of public policy: "The Grantor shall have the right to refuse to approve any such building plans . . . [that] are not suitable or desirable, in the Grantor's sole opinion, *for any reason*, including purely aesthetic reasons." (emphasis added). This argument is without merit. In *Sea Pines*, our supreme court found that a virtually identical covenant[6] was enforceable. 294 S.C. at 272, 363 S.E.2d at 894–95. The

---

[6] The covenant stated, in pertinent part:

No building, fence or other structure shall be erected, placed or altered on any lot in such residential area until the proposed building plans, specifications, exterior color or finish, plot plan (showing the proposed location of such building or structure, drives and parking areas) . . . shall have been approved in writing by Sea Pines Plantation Company, . . . **Refusal of approval of plans, location or specifications may be based by the company upon any ground, including purely aesthetic conditions, [that] in the sole and uncontrolled discretion of the Company shall seem sufficient.** No alterations in the exterior appearance of any building or structure shall be made without like approval by the company.

*Sea Pines*, 294 S.C. at 272 n.1, 363 S.E.2d at 895 n.1 (emphasis added).

court noted that the circuit court correctly determined the covenant provided "broad powers" to disapprove of structural alterations. *Id.*

Accordingly, the master correctly determined that provision 2.8 was valid and enforceable.

Remaining issues

Lanier argues Boies should be estopped from enforcing provision 2.8. However, Lanier has abandoned this issue on appeal by raising only conclusory arguments with no relevant supporting authority. *See Mulherin-Howell v. Cobb*, 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct. App. 2005) (finding an issue is abandoned when an appellant raises only conclusory arguments citing no supporting authority). Lanier cites only the following authority: "[T]he court must consider equitable doctrines asserted by a party when deciding whether to enforce the covenant." *Buffington v. T.O.E. Enters.*, 383 S.C. 388, 394, 680 S.E.2d 289, 292 (2009). However, Lanier does not cite any authority providing the elements of estoppel or supporting its application.

Lanier also argues the master erred in finding that other parcels sold by Boies were subject to the updated covenants. Similarly, this issue has been abandoned on appeal because Lanier offers only conclusory arguments and cites no supporting authority. *See Mulherin-Howell*, 362 S.C. at 600, 608 S.E.2d at 593–94 (finding an issue is abandoned when an appellant raises only conclusory arguments citing no supporting authority).

**CONCLUSION**

Based on the foregoing, we affirm the master's order in its entirety.

**AFFIRMED.**[7]

**LOCKEMY, C.J., and GEATHERS and HEWITT, JJ., concur.**

---

[7] We decide this case without oral argument pursuant to Rule 215, SCACR.